## R. B. CHAVE *vs.* J. I. DOWSETT.

### IN EQUITY. BEFORE JUDD, J.

### DECEMBER, 1878.

Plaintiff claims rescission of a contract of sale of a vessel, on the ground of fraud, and seeks an accounting.

Held, on demurrer, that equity has jurisdiction, and that plaintiff has not an adequate remedy at law by suit for damages.

On the merits, the Court finds that plaintiff was not deceived as to defendant's title, and, if he was, has suffered no damage thereby; and orders an accounting.

The mortgagee of a vessel, in possession, is not vested with the legal title until foreclosure, although the mortgagor is unable and unlikely to redeem.

### DECISION OF JUDD, J., ON DEMURRER.

I am of the opinion that this bill discloses equities.

Courts of Equity have jurisdiction in cases of fraud where the remedy at law would be inadequate.

The bill alleges the misrepresentation of a material fact for the purpose of inducing the complainant to enter into the purchase.

To be particular, the bill alleges that respondent, in order to induce complainant to exchange his half interest in the W. H. Allen for a half interest in the Pomare and $500, represented that he was the owner of the Pomare, whereas he was not, and therefore asks to have the sale rescinded.

It is contended that as this is a matter of misrepresentation in regard to personal property, the law gives ample relief by an action for damages, and questions of ascertainment of damages are properly for a jury.

This bill, however, does not claim damages for non-fulfilment of the agreement to transfer one-half of the Pomare, but claims a rescission of the whole contract itself on the ground of fraud.

The bill further shews that in pursuance of this joint ownership of the Pomare, a contract was entered into for the sailing of the vessel on joint account, and that there are mutual accounts arising from these transactions which require adjustment even independently of the question whether the sale can be rescinded.

In mutual accounts growing out of privity of contracts, equity has general jurisdiction. 1 Story, Eq. Jur., §459.

Every original bill in equity may be deemed a bill of discovery, for it seeks a disclosure by the answer of circumstances relative to the complainant's case.

But this is not what is technically known as a bill for discovery, where merely a discovery of facts resting in the peculiar knowledge of the respondent, or of deeds, writings or other things is asked, but seeking no relief in consequence. Such bills are usually in aid of a proceeding at law.

In this case, however, relief from the contract for the purchase of the Pomare is asked for, and also, that an account of the joint transactions of the parties may be taken.

I do not see how it would be possible for the complainant on such a statement of facts to obtain redress at law. For if he should sue for the purchase-money paid for the interest in the vessel and his wages in running her, which are ascertained amounts, he would still be entitled to his share of the profits if

any were made, which cannot be ascertained until respondent has accounted. I therefore overrule the demurrer.

*E. Preston,* for complainants.

*J. M. Davidson,* for respondent.

Honolulu, December 7th, 1878.

---

DECISION OF JUDD, J., ON THE MERITS.

This is a bill in equity alleging that the complainant was induced to exchange his one-half interest in the W. H. Allen for a one-half interest in the Pomare, by the respondent's false representation that he was the owner of the Pomare, whereas he was not the owner, etc.; the bill prays relief from this sale and an account of the dealings between the parties.

From the correspondence submitted and the evidence taken, which are voluminous and lengthy, I find the following important facts: That in September, 1876, both the W. H. Allen and Pomare were in the Port of Honolulu, the former being owned jointly by complainant and respondent, and being then re-coppered and repaired. The Pomare was a better vessel for the cattle trade to Tahiti, with which trade complainant was familiar and had been engaged in while sailing the W. H. Allen. The parties had had some conversation in reference to a purchase by complainant of a half interest in the Pomare. Her situation was as follows: Her owners—Messrs. George W. Macfarlane & Godfrey Brown—had turned her over to the agency of the respondent, who assumed a mortgage of $7000 on her; Messrs. Macfarlane & Brown had given to the respondent a bill of sale of her on the 7th September, 1875, the consideration named being $7000, the amount of the mortgage which respondent assumed to pay, and these parties executed on the 11th September an agreement which, after reciting this bill of sale, declared that the transfer was intended as security by way of mortgage; and that while any money remained due on this security, Macfarlane & Brown would keep the vessel in good repair and condition, keep her insured, and on the 7th September, 1876, would repay the $7000, with interest, and

would indemnify respondent against loss by collision, negligence of captain, officers or crew, or "otherwise however," in relation to the said vessel; and the respondent declared that he held the vessel as mortgagee, and covenanted to retransfer her to Macfarlane & Brown on the repayment to him of the moneys advanced at the time stated. At the expiration of a year's running the vessel proved to be not successful, and was owing respondent somewhat over $5000 for advances, in addition to the $7000 for which the security was given.

I do not understand that the failure of Macfarlane & Brown to pay these amounts on the 7th September, 1876, operated to make the bill of sale absolute, for Courts of Equity hold that where a deed absolute is coupled with a defeasance, it becomes a mortgage, and at the expiration of the time agreed for the repayment the title does not vest in the grantee, but "once a mortgage always a mortgage," and the right to redeem is still open to the grantors. 2 Hilliard on Mortgages, Chap. 4. The legal situation, then, of the Pomare in October, 1876, when the complainant and respondent had their negotiation, was that she was the property of Macfarlane & Brown, and was mortgaged beyond her value to respondent.

I do not place much importance upon the question which is disputed, as to whether respondent or Macfarlane actually negotiated the sale to complainant. The solution of this question cannot alter the legal status of the parties.

The questions of importance in this case are whether Chave was deceived, and if so, has he suffered damage thereby. From all the evidence adduced, that of both complainant and respondent, as well as of Macfarlane, Brown and Buchanan, I am led to the conviction that complainant knew at the time the real situation, *i.e.*, that Macfarlane & Brown were really unable to redeem the vessel, and there was no likelihood that they would be able to do so; and that he (complainant) had enough on which to hold respondent in case they did redeem the vessel and thus put it beyond the power of respondent to make him a title, for the complainant took an agreement from respondent in which their respective interests in the Pomare were declared

and this agreement would estop respondent from ever denying to complainant that he (complainant) was the owner of one-half interest in the Pomare. But if complainant was actually deceived into parting with his share of the W. H. Allen, how is he damaged thereby?

The various losses which the vessel sustained on her long cruise of twenty-three months were owing, some of them, to stress of weather; and the other losses are attributable to unforeseen changes in the market at the various ports visited, for none of which can the respondent be held liable. Nor can the detention at Melbourne after the verdict in favor of the Pomare for the collision, in order to hear the application to the Court on the *rule nisi,* be laid to respondent, for the grounds for the rule were the alleged excessive damages as well as the question as to proof of title of the vessel, and we cannot say which was mainly relied upon.

I am of the opinion that complainant has shown no instance in which the pecuniary losses sustained can be attributed to respondent's defect of title, for complainant, as master and half-owner, planned and executed all her various ventures and voyages without reference to respondent. Some of these, as for instance the taking of a charter for a load of lumber from Burrard's Inlet to Sydney, would seem to be ill-advised for so small a vessel as the Pomare; but, as the complainant acted in good faith in this matter, I cannot hold him responsible for more than his share of the loss.

On the 10th August, 1878, the deed of defeasance between Macfarlane & Brown and respondent was cancelled and surrendered. This vested the title of the Pomare completely in respondent, and he must now make title to complainant; and I refer the accounts to John E. Barnard, Esquire, Master of this Court, and decree that, on their coming in, the brigantine Pomare be sold, and the proceeds be held for the payment of the amount found due against either party.

*E. Preston,* for complainant.

*J. M. Davidson,* for respondent.