[Civ. No. 1831. Third Appellate District.—May 11, 1918.]

META STEPHENS TURMAN et al., Plaintiffs and Appellants, v. JOHN F. ELLISON, Administrator, etc., et al., Defendants and Respondents; LEONARD LEMUS KLEMMER, Defendant and Appellant.

PAROL TRUST IN REAL PROPERTY—EVIDENCE.—In an action to establish a parol trust in real property, the testimony of the plaintiffs without corroboration is sufficient to warrant a judgment in their favor.

ID.—CHARACTER OF EVIDENCE.—In order to prove a trust in real property by parol under a deed absolute in its terms, the evidence must be clear, satisfactory, and convincing.

ID.—QUESTION FOR TRIAL COURT—APPEAL.—The determination of the sufficiency of evidence to establish a trust in real property is for the trial court, and the same will be accepted as conclusive by the appellate court.

ID.—FINDINGS SUPPORTED BY EVIDENCE.—In this action to have it declared that defendants were holding certain real property in trust for the plaintiffs under a conveyance absolute in its terms, it is held that the findings against the existence of the trust are supported by the evidence.

APPEAL from a judgment of the Superior Court of Glenn County. Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Chas. L. Donohoe, Glenn West, and W. T. Belieu, for Appellants.

Frank Freeman, for Respondents.

BURNETT, J.—The case has been exhaustively argued, although no novel proposition of law is involved. Indeed, the legal principles so ably discussed by counsel have been frequently considered by eminent jurists throughout the country and it would be idle to attempt in this opinion to add to the learning upon the subject. It is doubtful even if any specific statement of the facts can be of any value to the profession, and we might content ourselves with the declaration that the findings of the court are supported, and therefore the judgment must be affirmed.

However, it may not be amiss to call attention to some of the circumstances that justify the conclusion of the learned trial judge. In April, 1907, Dr. L. P. Tooley was living with his wife, Martha L. Tooley, in Willows, the county seat of Glenn County. Being ill, and believing that he would not recover, he determined to dispose of his property. He sent for his attorney, Judge Frank Moody, and after a conference with him he decided to make a transfer of all his property, real and personal, to his said wife. Thereupon, a deed, absolute in form, was made to her of the real estate, and a bill of sale of the personal property. In May, 1907, the doctor

died, leaving as his heirs his widow; Logan M. Tooley, the daughter of himself and said Martha L. Tooley; and the two plaintiffs in this action, daughters of a former marriage. The deed and bill of sale were placed on record by said widow, who continued in the use and possession of said property until her death on the twelfth day of February, 1913. She left a holographic will as follows:

"I give all my property at my death to my daughter, Logan Mattie Tooley, if at her death she has neither husband or children. I desire any property that may be left divided equally among my sisters and brother."

This will was admitted to probate, and on request of said Logan Mattie Tooley, John F. Ellison was appointed administrator with the will annexed and proceeded with the administration of said estate. Prior to the distribution of said estate, Logan M. Tooley died, leaving a will in which she devised all her property, except a small bequest, to one Lemus L. Klemmer. At the request of the latter, the plaintiff, Meta Stephens Turman, had said will admitted to probate and herself appointed administratrix with the will annexed.

In February, 1914, the said John F. Ellison filed his final account as such administrator and petitioned for the distribution of the residue of the estate of said Martha L. Tooley to the brother and sisters of said deceased, alleging that said Logan M. Tooley had died unmarried and without any surviving child. Said Meta Stephens Turman filed a verified written objection to this petition, claiming that the second clause of said will of Martha L. Tooley was void, that said property had passed absolutely to the daughter, Logan M. Tooley, and asked that it be distributed to her estate. In this opposition Klemmer joined. The lower court construed the will in accordance with the contention of said contestants, but the supreme court reversed said decision, holding that said second clause of the will was operative and that the residue of the property should be distributed to said brother and sisters of Martha Tooley. (*Estate of Tooley*, 170 Cal. 164, [Ann. Cas. 1917B, 516, 149 Pac. 574].)

It is under this will that the defendants claim the property. Said decision of the supreme court was filed in the superior court of Glenn County on June 12, 1915, and four days thereafter this suit was brought by plaintiffs to have it declared that said defendants are holding said property in trust for the

two plaintiffs and for the defendant Klemmer, as devisee of said Logan M. Tooley.

This claim is based upon the allegations of the complaint that there was an oral agreement on the part of Dr. Tooley, his wife, and the two plaintiffs providing that he should deed all his property to his wife and that plaintiffs would cause her no trouble during her lifetime; that at her death she would convey the residue of said property to the plaintiffs and said Logan M. Tooley; that by reason of this agreement he executed the said conveyance to his wife, and after his death she repudiated and violated said agreement and made said will as aforesaid. Certain questions of fact were submitted to a jury and they found in favor of the position of plaintiffs, but the trial court did not adopt the jury's view, but concluded that "said L. P. Tooley did transfer all his property, both real and personal, to his wife unconditionally, in fee simple to have and to hold to her and her heirs and assigns forever and without any condition or limitation."

We may concede that the complaint states a cause of action, that it sets up a trust that could be legally enforced by a court of equity, and what is more to the point of controversy, that there is evidence in the record which would support a finding and judgment in favor of plaintiffs.

To make manifest the latter statement we may refer to and quote from the testimony of Meta Stephens Turman. She said that shortly before her father died—probably two weeks—a conversation took place at her father's house in his bedroom; that the persons present were the father, her sister, Cliffie I. Clarke, her half-sister, Logan Tooley Clark, and her stepmother, Martha L. Tooley.

"When we went into the room I stepped up to the bed and asked my father how he was. I knew he was very low, and he said he was glad we had come to see him because he wanted to talk to us, and he turned to my stepmother, and says, 'Mattie, I wish you would tell Logan to come in the room.' And when Logan came in the room he said, 'I wish to tell you girls how I am going to leave the property; and we told him not to talk, because he was very low and could only say one word at a time, and my stepmother told him not to talk, and he said he must. He says, 'I want to explain how I am going to leave the property.' He says, 'One time I wanted to leave one thousand dollars to each of you girls of

the insurance' . . . a life insurance policy for one thousand dollars apiece for the girls, and he was going to change that and put it in Mrs. Tooley's name as well as all the other property, and that he had told Judge Moody to fix up the papers to that effect, because she promised him if he did put all the property in her name and she used it all her life that at her death she would divide what was left between us three girls, and he says, 'Didn't you promise me that?' and she says, 'Yes, I did,' and he says, 'You have heard the promise and I don't want you to bring any lawsuit, or create any trouble;' and I gave my promise and my sister didn't say anything, and I did for her, because she promised to divide at her death, and I promised we wouldn't bring any suit against it. And then papa went on to say that she was old and after he died she wouldn't have anyone to provide for her, and we were married and had husbands, and he told her to give us girls one. hundred dollars apiece and Logan twenty-five dollars after his death—that that was a gift to us girls. And that was all that was said right there. We were all crying and my father—it was with the greatest effort that he explained anything at all to us.''

Nor was it necessary for plaintiffs to corroborate the testimony in order to warrant a finding in their favor. The legislature has provided that ''the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact except perjury and treason.'' The present case is not within the exceptions; therefore, respondents are in error in contending that the burden was upon plaintiffs to introduce more than their own testimony in order to legally entitle them to prevail in the action. There are some decisions from other jurisdictions that seem to hold to such view but such is not the law in this state.

It is true, though, that the evidence to show that a deed is not what it purports to be, that notwithstanding its absolute terms the grantee holds subject to a parol trust, should be *clear, satisfactory,* and *convincing.* (*Bollinger* v. *Bollinger,* 154 Cal. 695, [99 Pac. 196].)

But it is also true, as held in the Bollinger case and many others that might be cited, in fact, it follows from the scheme of our judicial procedure that the proper application of this rule, when there is substantial evidence to support the existence of a trust, must be left to the trial court, and its deter.

mination that such evidence is *clear, satisfactory,* and *convincing* will be accepted by the appellate court as conclusive.

It is likewise the law that although one witness, or more, may testify positively to facts constituting a trust and directly supporting the theory that the deed was not intended to be absolute as it purports to be, the trial judge is under no legal compulsion to find in accordance with such testimony. He must be convinced by it in order to warrant a judgment attaching any such condition to the solemn instrument executed by the parties. To his mind the evidence must be *clear, satisfactory,* and *convincing* in order to find a trust, but if he does not believe the witness is telling the truth, or if he is convinced that he is materially in error as to the terms of the declared trust, it is not only the privilege of said judge but it is his duty to reject such testimony and base his finding upon the presumption that follows from the execution of a deed absolute in form, that the grantor intended to vest the estate in the grantee unembarrassed by any secret trust or encumbrance.

The foregoing are mere truisms of the law and we need not cite authorities therefor. Nor is the proposition complicated by the fact that a jury may have found in accordance with the position of the one questioning the integrity of the deed. It is the chancellor who must be satisfied, and it is to his judgment and conscience that the matter must be submitted. In simple phrase, if A conveys to B an estate in absolute terms and C testifies that it was a trust, in an action to so charge the land, if the witness does not convince the trial judge that such trust was created, and the finding is in accordance with the presumption that arises from the instrument itself, it would be a reflection upon the honesty or capacity of the court below and an invasion of its province for an appellate court to set aside the judgment simply for the reason that the insensate record on appeal contains no affirmative evidence of the improbability of the testimony of the witness.

Besides, the record before us discloses certain considerations that confirm us in the belief that the learned trial judge did not decide arbitrarily against the claim of appellants and that their story was justly regarded with suspicion and distrust.

Indeed, it is true that actions to enforce oral agreements claimed to have been made with persons who are dead involve

37 Cal. App.—14

a dangerous assault upon property rights, and they are often supported by false testimony and they naturally and reasonably excite suspicion. And while they may be genuine and worthy of confirmation, they require the closest and most careful scrutiny to prevent injustice being done. (*Wall's Appeal*, 111 Pa. St. 460, [56 Am. Rep. 288, 5 Atl. 220].) They afford and carry opportunity for fraud against the estates of deceased persons and a great temptation to perjury on the part of disappointed or avaricious relatives. (*Hinkle* v. *Sage*, 67 Ohio St. 256, [65 N. E. 999].) Such considerations could not be laid out of view by the trial judge.

He could not fail to observe, also, that the testimony of the plaintiffs was given nearly nine years after the transaction is said to have occurred. It is quite probable—even more than probable—that after the lapse of such a period the memory would be inaccurate as to the facts and conditions of the affair. It requires a good deal of courage and assurance for a witness to undertake under such circumstances to state definitely just what was said and done. If he does confidently make such attempt without ever having reduced the details to writing or having kept them vivid in his memory by frequent expression or recital of what took place, it is difficult to give full credit to his story. The distrust is naturally augmented by the circumstance that the testimony is not presented in any court until all the parties who could have any interest in contradicting it are dead. While we cannot say that under such circumstances it must necessarily be rejected as unworthy of belief, yet it must inevitably occur that the trial judge will regard it with serious misgivings. (*Mattingly* v. *Pennie*, 105 Cal. 514, [39 Pac. 200].)

In fact, it is proper to say that evidence given under such circumstances should not only be received with the greatest caution, but it has been declared to be evidence of the weakest and most unsatisfactory nature. (*Austin* v. *Wilcoxson*, 149 Cal. 24, [84 Pac. 417].)

Moreover, there are other substantial reasons disclosed by the record which appear amply sufficient to justify the action of the court in rejecting the testimony of the plaintiffs, some of which we will briefly state. The conduct of the plaintiffs in not asserting their claims and their attitude toward the will of Martha L. Tooley and of her daughter, Logan, are circumstances of moment. The fact that said Martha L.

Tooley in 1911 made a will devising all her property to her daughter Logan with the remainder over to the defendants, thus repudiating and violating an alleged solemn promise made to her husband in his dying hour is, at least, some evidence that no such promise was made. The presumption is that she was innocent of any such grievous wrong. (Section 1903 of the Code of Civil Procedure.) The will of the said daughter, also, is entirely inconsistent with her knowledge and recognition of any such trust.

Judge Moody's testimony, it may be added, is strongly opposed to plaintiffs' theory. He was the adviser of Dr. Tooley and drew the deed and bill of sale. He testified: "Dr. Tooley sent for me to come up to his house on business. I didn't know what he wanted until I reached there and he told me at that time, in the presence of Mrs. Tooley, that he wanted to dispose of his property and he wanted to give it to his wife. There was a good deal of conversation at that time, which all culminated in my advice to Dr. Tooley to make a deed and bill of sale to his wife to carry out the purpose which he stated to me at that time. . . . There were no conditions as to the making and delivery of the deed. Dr. Tooley requested Mrs. Tooley to give each of his two daughters, Mrs. Turman and Mrs. Clarke, one hundred dollars out of the insurance money when it should be collected."

He testified further that they had another meeting a day or two afterward when the deed was signed and acknowledged and furthermore, "There were no conditions upon which the deed was to be made. Dr. Tooley stated to me the reason he was doing that was that his two daughters had husbands who were capable of making them homes and all his wife had would be what he would leave her. All he had was made by Mrs. Tooley and himself; that they had practically nothing when they were married and that she had made as much of the money they had saved as he had. Mrs. Tooley, in answer to the doctor that he wanted his daughters to have one hundred dollars apiece, said she certainly would see that they got it, or words to that effect."

We must assume that the lower court gave full credit to the testimony of Judge Moody and that he was entitled to that consideration. Under the circumstances, it would seem quite improbable that if Dr. Tooley desired to charge the conveyance with the burden of a trust that he would not consult his

legal adviser in relation to it. It would occupy a large part of the conversation, as it involved a complicated question concerning which a layman would need information. It will not do to say that it was a private family affair which the doctor hesitated to discuss with his attorney. Why it should be considered more personal or sacred than the matters which he did mention, it is difficult to understand.

There is also the testimony of Mrs. Lizette Leddy relating to what the trial court was justified in believing was the same conversation by and through which plaintiffs claim the trust was created. She testified: "I walked into the bedroom and Dr. Tooley said, 'Well, here comes Liz'; that was a little nickname he had for me, and Mrs. Turman was on the bed, on her knees, imploring his forgiveness for something she had done, and she said, 'Oh, papa, papa, forgive me, papa, forgive me.' And he turned and said, 'I give all my property, real and personal, to my wife, Martha,' and she said, 'Oh, papa, we know.' And he said, 'Let me call the name, Martha L. Tooley.' He said, 'To Meta I give one hundred dollars; to Cliffie one hundred dollars and to Logan twenty-five dollars and forgive the debt.' And I stayed in the room quite a while and walked out and took my seat in the adjoining room, which was the dining-room, and you could have heard a pin drop. I never heard a sound."

She further testified that the plaintiffs soon went home. The foregoing is, of course, inconsistent with the position that a secret trust was created as claimed by appellant. It may be further stated that as to certain important matters which plaintiffs testified occurred within the knowledge and recollection of other eye-witnesses, the plaintiffs were contradicted by the other witnesses. This is pointed out in the brief of respondents and the testimony of Judge Ellison and Mrs. Ellison and Mrs. Leddy recited, but we need not repeat it.

It is contended that the trial judge adopted an erroneous theory in that he assumed that the conveyance of the property had already been executed when the promise in relation to the trust was made, and, therefore, he mistakenly concluded that said promise was not the inducement for the conveyance. However this may be, it is true that he found that there was no agreement whatever in relation to the property between Dr. Tooley and the plaintiffs, and this, of course, is sufficient to support the judgment.

The deed seems not to have been delivered to the grantee immediately on the day it was signed, and the conversation to which plaintiffs referred may have occurred after the deed was signed and before it was delivered. Thus it may be that the conveyance was not entirely completed until after said conversation. However, it is of no importance, as the learned trial judge was considering the case upon the assumption that the trust was attempted to be created; and whether he was right or wrong in his hypothetical view of the legal aspect of that situation does not affect the finding upon the other material question nor does it militate against the soundness of the judgment rendered.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.