Lois C. BUXBAUM, Executrix of the Estate of Vernon E. Buxbaum, Deceased, Plaintiff in Error,

v.

C. L. PRIDDY, Administrator of the Estate of W. H. Robins, Deceased, Paul H. Robins, William Henry Robins, and Kenneth H. Robins, Defendants in Error (two cases).

Nos. 37216, 37358.

Supreme Court of Oklahoma.

April 9, 1957.

Rehearing Denied May 14, 1957.

Application for Leave to File Second Petition for Rehearing Denied July 9, 1957.

Brown, Brown & Brown, McAlester, for plaintiff in error.

A. James Gordon, McAlester, for defendants in error.

CARLILE, Justice.

This action was instituted by Vernon E. Buxbaum in May, 1955 against C. L. Priddy, administrator of the estate of W. H. Robins, deceased, Paul H. Robins, William Henry Robins and Kenneth H. Robins, who alleged in his petition that the defendants, Paul Robins, William Henry Robins and Kenneth H. Robins were the sons of Polly Robins and W. H. Robins, who were married in 1912, and that he, plaintiff, was a son of Polly Robins by a former husband; that W. H. Robins died in 1954, and that the defendant Priddy was administrator of his estate and as such inventoried as belonging to the estate 540 acres of land in Pittsburg County, certain mineral interests in land in Pittsburg and Pawnee Counties, also considerable personal property consisting of farm products, cattle, two automobile trucks, farm implements and machinery, and a promissory note by William Henry Robins, and cash in checking accounts in the First National Bank and National Bank of McAlester, Oklahoma.

Plaintiff further alleged that Polly Robins was an Osage Indian allottee at the time of her marriage to Robins and had received approximately $117,000 in annual payments from the Indian Agency at Pawnee during her marriage with Robins, and that the said W. H. Robins was a day laborer and possessed no property or income prior to the marriage; that Polly Robins in 1938 died seized and possessed of the equitable and beneficial title in and to the property standing in the name of her husband, W. H. Robins; that it was her desire and request that her husband, W. H. Robins, hold legal title to the property dur-

ing his lifetime, and at his death the same be distributed equally to the plaintiff and the three other sons as sole and surviving heirs of Polly Robins; that plaintiff had made demand for his share of the property, but that defendants refused and are threatening to distribute and dispose of the property adversely to plaintiff's rights therein; that the described real estate was purchased with money of the said Polly Robins, and that the title and beneficial interest therein belongs in equal shares to the plaintiff and his three half-brothers. The plaintiff prayed for judgment and decree impressing said property with a trust and lien for the use and benefit of the plaintiff, and that he be decreed and given an undivided one-fourth interest in and to the real and personal property.

The original plaintiff, Vernon E. Buxbaum, died in September, 1955, and the action was revived in the name of his wife, Lois C. Buxbaum, as executrix.

The defendants, by answer, admitted that the defendant Priddy was administrator of the estate of W. H. Robins, deceased, and that the other defendants and plaintiff were the sons and sole surviving heirs of Polly Robins, deceased, but generally denied that the described real and personal property was ever subject to a trust in favor of Polly Robins, or her heirs, and denied that the money and income of Polly Robins was used to purchase the described property, and alleged that W. H. Robins was the title holder and owner of the property and held the same adversely to all other persons; that the estate of Polly Robins was duly administered in the County Court of Pittsburg County; that W. H. Robins, administrator of her estate, inventoried as the only property of said deceased her Indian headright; that plaintiff was an adult at the date of his mother's death and had full knowledge of the facts and made no objection to the inventory of her estate, nor to the distribution thereof; that subsequent to the death of Polly Robins he, W. H. Robins, held title and possession of the real estate under claim of absolute ownership and used the income therefrom and

sold a portion thereof without objection from the plaintiff, and that plaintiff's claim of ownership thereof was barred by the Statute of Limitations and by laches.

Upon trial of the issues judgment was entered for the defendants. The journal entry is in part as follows:

"The Court, having heard the evidence offered and the argument, and being fully advised in the premises, finds that the allegations of plaintiff's petition are not supported by that clear, cogent and convincing evidence required to establish a resulting trust, that any claim which the plaintiff may have had against the defendants herein was barred by statutes of limitations and by laches at the time of the commencement of this action and that judgment herein should be for the defendants."

The plaintiff appealed and the parties will be referred to here as they were in the trial court.

The plaintiff presents her assignments of error under seven propositions. The first three are so related that we will consider them together. They are as follow:

"1. When a transfer of real property is made to one person and the consideration is made by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

"2. When a husband purchases property in his own name with the separate money or separate property of his wife, a judgment or finding of fact that a trust in her favor does not exist is erroneous.

"3. In Equity case, the Supreme Court will search the whole record and will reverse a judgment of the lower court which is against the weight of the testimony."

The propositions are substantially correct, but the question arises as to whether the facts and circumstances of the present case are such that the propositions stated are

applicable thereto. The first proposition is the same as Title 60, § 137, O.S.1951. The plaintiff asserts in her brief that it was proven by overwhelming testimony that the money which Polly Robins received as an Osage Indian allottee was placed in a bank account in the name of W. H. Robins, and that it was used to purchase land, title to which was taken in the name of W. H. Robins. If the record in this case supported such statement then a proper disposal of this appeal would be much less difficult. The parties introduced the testimony of a number of witnesses, also several pages of bank ledger sheets and various deeds.

The following holding and statement from the opinion in Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, 1047, is applicable to the present case:

"'A resulting trust may be established by parol evidence, but the law requires that the proof necessary to establish it should be of the most satisfactory kind. The onus of establishing a resulting trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor the evidence must be clear, unequivocal, and decisive.' * * *

"We have reviewed this record. The testimony is in conflict, as is usually the case in controversies of this character. In their briefs the parties have cited many cases in support of their respective arguments. In the final analysis of such authorities we come to the inevitable conclusion that each such case, being of equitable cognizance, must stand or fall on its own facts. A detailed review of several hundred pages of testimony would unduly extend this opinion."

There was put in evidence a typewritten statement from the Bureau of Indian Affairs showing that Polly Robins, an Indian allottee and owner of an Osage headright, received approximately $113,000 in quarterly payments during the 26 years, 1912–1938, she was married to W. H. Robins. She died in 1938. There was no record evidence or direct testimony as to what became of the payments made to Polly Robings; there was no evidence that she carried a bank account in her name. C. L. Priddy, administrator of the estate of W. H. Robins, also president of the National Bank of McAlester, called by defendant, testified that W. H. Robins did business with the bank around 22 years and carried an account there in his name; that Mrs. Robins did not check on the account; that he had heard that she received an allotment from the Osage Agency, but did not see or recall an instance of her checks coming through the bank.

J. K. Pemberton, cashier of the First National Bank of McAlester, called by plaintiff, identified 50 pages of bank ledger sheets on the account of Will, or W. H., Robins. The first sheet of the account covered a period from July, 1915 to February, 1916. The next from November, 1918 to March, 1919. Other sheets covered the period from April 1, 1919 to November 4, 1927, and the next from September, 1944 to July, 1954. The witness testified that the ledger sheets were all they could locate, the others had been lost or destroyed, and he was of the opinion that Mr. Robins carried an account with the bank during the period from 1928 to 1943, but he could not say positively. He further testified that the ledger sheets for 1954 show the amount on deposit at the time of the death of Mr. Robins in July, 1954 was $5,402.

Don B. King, called as a witness by plaintiff, testified he was cashier of the National Bank of McAlester. He said the bank records reflected an account in the name of Will Robins covering a period from May 31, 1941, which was as far back as he went, until the death of the depositor in July, 1954, at which later date the amount shown on deposit was $13,558. He testified to the amount on deposit on various dates and said the records on the account of W. H.

Robins prior to 1936 were destroyed in February, 1955, just prior to the bank moving into a new building.

There was undisputed testimony that W. H. Robins worked as a day laborer prior to his marriage with Mrs. Robins in 1912, and he was not known to have had other income or property.

Pearl Wooten, a cousin of Mrs. Robins, testified that Mrs. Robins, during the last year of her life had said she was not going to make a will, that the law was good enough where they would all share alike.

Doris Harr, a sister of Mrs. Robins, testified that she inquired of her sister why she let Mr. Robins handle all of the business and she said it was because she had judgments against her; that a former husband, Giles Horne, and she owed $10,000. Witness further said she was with her sister, Mrs. Robins, shortly before she died and the sister said in the presence of Mr. Robins that she wanted all the property held together until Mr. Robins was gone and then she wanted it to go to her four boys, and Mr. Robins said that her wishes would be carried out. The testimony did not specify any particular property.

Marjorie Watson, a sister-in-law of Mrs. Robins, testified that Mr. Robins explained to her that when they were married Mrs. Robins had debts and judgments against her and they agreed to put title to a piece of land in his name, also the bank account, to protect it.

There was other testimony of a similar nature, and further testimony which had but little weight or value on the question at issue.

The defendants called Betty Wilson, who testified that she had lived on the Robins land off and on since 1926, and had been in the Robins home from April, 1938 taking care of Mrs. Robins until her death in August, 1938. She said Mrs. Robins, in her presence, told Paul Robins, her son, just before she died that she, Mrs. Robins, did not have anything but an old cow, and on cross-examination testified that Mrs. Robins said to her "Well, Wilson, there is one

good thing about it. If anything happens to me Vernon's (Buxbaum) got his part."

And witness, Fred Lowe, who purchased some of the Robins land after the wife died, testified that Vernon Buxbaum said to him several months after he bought the land that he, Vernon, thought his father made a big mistake when he sold it.

George Kirkpatrick testified that he and Mr. Robins bought and sold cattle together, and in 1933 they fed out a bunch of cattle on which they suffered a loss, and in talking to Mrs. Robins about it she said "Well, don't worry, that's my money".

The record shows that Mr. Robins purchased and sold real estate in his name; that upon the death of his wife in 1938 he was appointed administrator of her estate and inventoried as her estate only her Osage headright, which right was decreed and distributed by the County Court to the husband and four sons. There was much testimony concerning oral self-serving and against interest statements said to have been made by both Mr. and Mrs. Robins; Ward v. Ward, 197 Okl. 551, 172 P.2d 978, 983, holds;

"'Oral testimony of oral statements against interest made by deceased persons many years before is the weakest of all evidence.' * * *

"When a citizen of this state dies, holding title to real estate in his own name, which he has so held and managed and occupied for several years as exclusive owner, and another appears and claims an interest therein from the time of acquisition thereof by the decedent, the courts are required to leave the title in the decedent, as the parties themselves had left it, unless the adverse claimant can establish his interest therein by evidence which is clear, unequivocal, and decisive."

There was no evidence relating to how or when the personal property referred to in plaintiff's petition was acquired. The trial court saw the witnesses and heard their testimony, except three, whose depositions

were read, and was in a better position to observe their demeanor.

After a full consideration of the record and evidence we reach the conclusion, as did the trial court, that the allegations of plaintiff's petition are not supported by the clear, cogent and convincing evidence required to establish a resulting trust.

"In a case of equitable cognizance the judgment of the trial court will be affirmed unless clearly against the weight of the evidence." Shaw v. Shaw, Okl., 282 P.2d 748, 749.

The next proposition presented by the plaintiff reads:

"It is against public policy to admit the testimony of an attorney who had the information about which he is testifying from his confidential relationship with a party."

Title 12, § 385, O.S.1951 is in part as follows:

"The following persons shall be incompetent to testify: * * *

"An attorney, concerning any communications made to him by his client, in that relation, or his advice thereon, without the client's consent. * * *"

Plaintiff complains of the testimony of Judge W. A. Lackey on the ground that he was an incompetent witness under the above statute in that he was an attorney for Mr. Robins from 1916 until he became District Judge in 1947. Judge Lackey testified that he and Mr. Robins were the closest of friends; that Robins gave him a 5-acre mineral interest in certain land, deed to which was also signed by Mrs. Robins. He further testified that he was attorney for Mr. Robins in litigation involving some land in Pawnee County which resulted in Mr. Robins receiving a settlement of $9,000 or $10,000. He was also attorney for Mr. Robins in the probate proceedings of the estate of Mrs. Robins, deceased. His testimony related to facts within his personal knowledge and not to confidential communications. The litigation in Pawnee County and the probate proceeding of the estate of

Mrs. Robins were matters of public record. Furthermore, admission of incompetent evidence in a cause tried to the court is not ordinarily reversible error where there is competent evidence reasonably tending to support the judgment. Liles v. Bigpond, 190 Okl. 112, 121 P.2d 596. We fail to see wherein the testimony given by the witness was violative of the provisions of the statute relied on.

The plaintiff's fifth proposition is that it is error for the court to refuse to admit competent testimony, or to admit incompetent testimony over an objection. In support of the proposition plaintiff calls attention to Title 12, § 384, O.S.1951, commonly referred to as the "Dead Man's Statute", and asserts that the defendants were permitted to testify over objections as to their competency as a witness, and the competency of their testimony, about conversations and transactions had with W. H. Robins and wife, Polly Robins, and argues that the testimony of the defendant, Henry Robins, was in violation of the statute. Henry Robins testified that he bought two tracts of land from his father, W. H. Robins, the first 80 acres he paid for, and on the other gave a note, which he still owes. The adverse party referred to in the statute and in the present action is the plaintiff, executrix of the estate of Vernon E. Buxbaum, deceased, and under the record shows the statute did not apply.

The opinion in Clammer v. Fullerton, Okl., 259 P.2d 823, 824, refers to a number of decisions involving the statute, and the third syllabus holds:

"The inhibition provided for under 12 O.S.1951 § 384 is leveled against persons asserting a cause of action, the title to which was acquired immediately from a deceased person, and not against persons asserting a defense to such cause of action. * * *"

What we have stated with respect to the competency of the defendant, Henry Robins, to testify in the action also applies to the defendant, C. L. Priddy, administrator of the estate of W. H. Robins, and to the

defendant, Paul Robins, to whose competency and testimony the plaintiff objected.

The sixth proposition presented by plaintiff is that it is error for the trial judge to make findings of fact or conclusions of law not supported by the evidence.

At the conclusion of all of the evidence, and after the court had announced that the judgment would be for defendants, plaintiff's counsel requested the court to make findings of fact, whereupon the court called attention to the fact that no prior requests for findings had been made, and followed with a comment on certain parts of the evidence, but no findings of fact or conclusions ·of law were made. The argument made in support of the proposition is chiefly a continuation of the arguments presented and considered on the preceding propositions.

Plaintiff's seventh proposition alleges error in denying plaintiff's petition for a new trial based on newly discovered evidence. At the subsequent term following the trial of the action the plaintiff filed a petition for a new trial on the grounds of newly discovered evidence, pursuant to the provisions of Title 12, § 655, O.S.1951. Upon denial of the petition plaintiff perfected an appeal in this court, case No. 37,358, and the two cases were consolidated.

 The plaintiff, in support of her petition for a new trial produced the affidavit of Ray Crawley, and a joint affidavit by Kiser Bierman and Mrs. Bierman. Plaintiff testified that she and her husband, Vernon Buxbaum, had discussed Kiser Bierman and Ray Crawley, and their probable knowledge of the circumstances and facts relating to the issue in the case and said that Vernon told her he was unable to locate Ray Crawley; that after the October trial of the case she endeavored to locate him and subsequently learned he was working at Savanna, and the record showed that Mr. Bierman lived east of Hartshorne, and had lived there all of the time. Crawley and Bierman were sworn as witnesses in the case and each affirmed the contents of their affidavits, which were put in evidence.

Mrs. Bierman was ill and unable to appear, but her affidavit was admitted in evidence. The contents of the affidavits and the testimony of Crawley and Mr. Bierman were chiefly in accord with the testimony of other witnesses produced and offered by the plaintiff in the previous trial of the action. The trial judge did not state the reason or basis for denying the petition for a new trial. The testimony in support of it was largely cumulative, and it is not clear that due diligence was exercised in producing the same. We are unable to say that the action of the trial court in denying the petition for a new trial constituted an abuse of legal discretion by the court.

The judgment and order of the District Court in favor of the defendants in each of the consolidated cases, No. 37,216 and 37,358, herein are affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON and JACKSON, JJ.

HALLEY, JOHNSON, WILLIAMS and BLACKBIRD, JJ., dissent.