[Civ. No. 22997. Second Dist., Div. Two. July 28, 1958.]

Estate of MAX L. SCHECHTMAN, Deceased. HAROLD S. STONE, as Executor, etc., Appellant, v. ABRAHAM SCHECHTMAN et al., Respondents.

Nathan L. Schoichet for Appellant.

Harry A. Franklin for Respondents.

HERNDON, J.—The controlling question on this appeal from an order denying a petition to remove executors and from an order settling their final account is the sufficiency of the evidence to support the findings of fact upon which the challenged orders rest. Appellant's case is founded upon contentions that this court must hold *as a matter of law* (1) that the decedent, at the time of his death, was the beneficial owner of interests in certain parcels of real property, the record title to which stood variously in the names of decedent's three sons; and (2) that the executors (two of said sons) wrongfully had failed and refused to inventory and account for these properties as assets of the estate. More specifically, therefore, the basic issue is the sufficiency of the evidence to support findings to the effect that decedent had no interest in any of said properties which could survive his death to become a part of his probate estate.

Max Schechtman, generally referred to herein as "the dece-

dent'' died on February 10, 1952. Ten years previously he had married Frances Stone. At the time of this marriage, Frances was a widow with two adult sons, Harold and Paul Stone, and decedent was a widower with three adult sons named Leo, Abraham and Jack. The latter had changed his name to Shepley. Upon decedent's death, Leo and Abraham were appointed executors of his will.

Frances survived the decedent exactly three years, her death occurring on February 10, 1955. Her son Harold Stone (appellant herein) was appointed executor of her will. It was in his capacity as executor of his mother's will that appellant objected to the account of Leo and Abraham and sought their removal as executors of their father's will. Appellant's asserted interest in the estate of Max Schechtman is predicated upon contentions that the disputed property interests allegedly owned by Max vested in Frances upon his death, and became a part of her estate.

On April 13, 1942, the day of his marriage to Frances, decedent transferred to his three sons a very substantial part of the real and personal property which he then owned. He had made other similar transfers a short time previously. These conveyances were without consideration. There is testimony in the record concerning decedent's contemporaneous declarations to the effect that his purpose in making these conveyances in contemplation of his marriage to Frances was to safeguard the separate status of the property, and to make certain the effectuation of his desire that his sons should have the property upon his death.

During the 10-year period beginning with his marriage to Frances and ending with his death decedent was actively engaged in buying, improving, managing, and selling real property. At decedent's direction, title to property purchased during this period was placed in the name of one or another of decedent's sons.

It would serve no useful purpose to detail here the tangled web of transactions described in the voluminous record. It is sufficient to note that decedent's real estate operations were uniformly profitable; that when a piece of property was sold, the proceeds would be used to acquire, or to improve, other property, and that decedent paid the taxes on the properties, attended to the making of repairs and improvements, collected rentals, and otherwise exercised dominion and control. Generally speaking, decedent reported in his income tax returns the income and the capital gains on sales as

though the properties were his own. The sons cooperated in the operations by executing such deeds, powers of attorney and other documents as were needed from time to time to effectuate transactions arranged by decedent, and to facilitate the exercise of his powers of management and control.

Appellant earnestly contends that there is no substantial evidence in the record to rebut the inferences reasonably to be drawn from the evidence above summarized to the effect that decedent was the beneficial owner and that the sons were holders of nothing more than bare legal title to the properties in question. This contention, however, runs counter to numerous precedents involving very similar factual situations, and it is defeated by the application of well settled principles limiting the powers of appellate courts in the review of factual determinations.

In probate proceedings, as in civil cases generally, the findings of the trier of the facts supported by substantial evidence may not be set aside by the reviewing court "although said court may believe the great preponderance of the evidence was the other way." (*Estate of Trefren,* 86 Cal.App. 2d 139, 141 [194 P.2d 574] ; *Estate of Weber,* 113 Cal.App.2d 160, 165 [247 P.2d 939] ; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

Whether the execution, delivery and recordation of a deed was intended to convey the beneficial interest of the grantor is a question of fact for the trial court. (*Estate of Filippi,* 9 Cal.App.2d 407 [49 P.2d 892] ; *Cirimele* v. *Lucchesi,* 100 Cal.App.2d 371, 375 [223 P.2d 681].) In *Longley* v. *Brooks,* 13 Cal.2d 754, 762 [92 P.2d 394], the contentions of the appealing party were quite similar to those advanced by appellant in the case at bar. In sustaining the findings of the trial court, the Supreme Court stated as follows: "Neither can it be said there is merit in the contention of appellants that after the asserted delivery of the deed, certain acts of the grantor allegedly showing an exercise by her of dominion or control over the property conclusively negatived an intent on her part to have transferred title to the ranch by the delivery of the deed. In view of the many circumstances which showed an intention on the part of Marcia Brooks to part with title to the land, neither the fact that after the alleged delivery of the deed to Emery Brooks the taxes on the property continued to be assessed to her, nor that, personally, she rented the property and collected the rentals therefrom, and personally attended to other business matters relating to the

property, is sufficient to overcome an inference of delivery of the deed and consequent transfer of title which was deducible from other evidence.''

There is a strong presumption that the holder of the legal title owns the full beneficial interest in the property. (*Glasgow* v. *Andrews,* 129 Cal.App.2d 660, 664 [277 P.2d 400].) The evidence to overcome this presumption and establish that the property is held in trust must be clear and convincing. (*Rench* v. *McMullen,* 82 Cal.App.2d 872, 874 [187 P.2d 111] ; *G. R. Holcomb Estate Co.* v. *Burke,* 4 Cal.2d 289, 299 [48 P.2d 669] ; *McQuin* v. *Rice,* 88 Cal.App.2d 914, 918 [199 P.2d 742].) And the question whether the evidence possessed that quality was for the trial judge. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583].)

No implication of a trust arises from a parent's purchase of property in the name of his child. Such a purchase is presumptively a gift or an advancement. (*Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240, 250 [196 P. 884] ; *Gomez* v. *Cecena,* 15 Cal.2d 363, 367 [101 P.2d 477] ; *Quinn* v. *Reilly,* 198 Cal. 465, 467-468 [245 P. 1091] ; *Daniel* v. *Sisnero,* 109 Cal.App. 8, 10-11 [292 P. 518].) In the last cited case, the real property in question had been purchased in the name of the son with money furnished by the father. Notwithstanding direct testimony that no gift or advancement was intended, the trial court found that the son was the beneficial owner. In affirming the judgment of the trial court, the reviewing court commented: ''On the other hand, there is a presumption of law that where a father pays the consideration, and title to property is taken in the name of the son, a gift, advancement or bounty is intended. (*Quinn* v. *Reilly,* 198 Cal. 465 [245 P. 1091] ; *Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240 [196 P. 884].) This presumption was, in the instant case, sufficient to sustain the action of the trial court.''

In *Altramano* v. *Swan,* 20 Cal.2d 622, at page 628 [128 P.2d 353], section 442 of the Restatement of Trusts is quoted with approval as follows: '' 'Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.' ''

In *Quinn* v. *Reilly, supra,* 198 Cal. 465, 467-468, the rule is stated as follows: "Section 853 of the Civil Code is but a formal declaration of the old and well-established doctrine of equity that a resulting trust arises in favor of a purchaser who pays the consideration money and takes the conveyance in the name of a third person. There are, however, exceptions, to this doctrine. It is well settled that one exception to the rule is found in transactions between parent and child. (*Russ* v. *Mebius,* 16 Cal. 350; *Hamilton* v. *Hubbard,* 134 Cal. 603 [65 P. 321, 66 P. 860] ; *Elliott* v. *Merchants Bank etc. Co.,* 21 Cal.App. 536-541 [132 P. 280].) These transactions are presumed to be in the nature of gifts, advancements or bounties. In short, the existence of the relationship of parent and child is a circumstance which *prima facie* establishes the presumption of an advancement and thereby rebuts the presumption of a resulting trust."

As we have pointed out, there is substantial evidence in the record from which the trial court reasonably could infer that decedent's purpose in making the conveyances to his sons immediately prior to his marriage to Frances, and in handling subsequent transactions as he did, was to insure against any possible future claim by Frances that his separate property or its avails or transmutations had become commingled with community property. In the circumstances here presented, it was entirely reasonable for the trial court to apply the presumption that in causing title to the disputed properties to be conveyed to his children, decedent intended to make advancements to them. Indeed, it is not unreasonable to suppose that it was decedent's purpose to insure against the very type of claim that is here asserted by his widow's successor in interest.

It may be conceded, as appellant argues, that some of decedent's actions with reference to the properties, including his payment of income taxes on capital gains from sales, and his various acts of dominion and control in the management of the properties, appear to be inconsistent with an intent or belief that actual ownership resided in the sons. Such concession, however, is only a concession that the evidence was conflicting and subject to divergent and conflicting inferences.

In concluding that we cannot properly disturb the trial court's findings with respect to the beneficial ownership of the properties with which appellant unsuccessfully sought to charge the executors, we have disposed of the principal ground

upon which appellant sought to remove them from office. However, appellant also contends that the executors were guilty of a fraud in allowing and paying a creditor's claim filed by Leo Schechtman for funeral expenses in the amount of $540. The propriety of the presentation and allowance of this claim depends upon the sufficiency of the evidence to support a finding that Leo had paid these expenses out of his own funds. The funeral expenses were originally paid by checks drawn against a joint bank account maintained by Leo and the decedent. Leo testified that the decedent had overdrawn his interest in the account so that the entire balance of the account belonged to Leo when the funeral expenses were paid. This testimony afforded substantial support for a finding in accord therewith.

The orders appealed from are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 22, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958.