354 P.2d 254

Anna M. JOSEPH, Appellant,

v.

Mary F. TIBSHERANY, executrix of the Estate of George F. Tibsherany, deceased, and Mary F. Tibsherany, a widow, individually, Appellee.

No. 6524.

Supreme Court of Arizona.

July 20, 1960.

Rehearing Denied Sept. 26, 1960.

Wilson & Wilson, Phoenix, for appellant.

Moore & Romley, Phoenix, for appellee.

ROSS F. JONES, Superior Court Judge.

Plaintiff (appellant) instituted action against the defendant (appellee) as executrix of the estate of George F. Tibsherany, deceased, and Mary F. Tibsherany, a widow, individually, to impress a constructive trust upon certain property situate in Maricopa County, Arizona, known as the Coronado Hotel on North First Street, Phoenix, Arizona. The complaint charges that

George F. Tibsherany during his lifetime at various times received from plaintiff certain sums of money for the purpose of investing said sums for the benefit of the plaintiff. At the time of the trial, plaintiff was of the approximate age of sixty-six years. She was born in Lebanon, and there is ample evidence of her illiteracy in the English language. In 1918, the plaintiff, while living with her husband in Utica, New York, sent for her only brother, George F. Tibsherany (deceased), who was then fourteen years of age and living in Lebanon. Thereafter, the plaintiff educated him by sending him through four years of school.

In August, 1926, plaintiff, her husband, and decedent moved to Mesa, Arizona. The plaintiff had worked from 1909 to 1926 sewing men's suits in a factory in New York. After moving to Arizona, plaintiff's husband and the decedent opened a dry goods store in Mesa, and plaintiff gave the deceased $8,000 with which to finance his part of the store. In 1929, decedent and his partner, Mr. Joseph, divided the store, and with his interest in the store and the merchandise decedent bought a farm near Mesa, Arizona.

In 1930 or 1931, decedent traded the farm for the Coronado Hotel in Phoenix, and two houses. The Hotel Coronado is the property here in question. Before trading the farm for the hotel and houses, decedent showed the property to plaintiff and got her consent to make the trade. Subsequently he received from the plaintiff the sum of $6,000 in cash to pay off the balance of a mortgage owed on the property, and agreed with her that the hotel was to be her property, and that the two houses were to belong to him. Arrangements were made between the decedent and the plaintiff that if she would leave the hotel in his name to bolster his financial statement, he would guarantee her $200 a month income from the hotel for the remainder of her life. A short time after the hotel was acquired, plaintiff gave decedent an additional $6,000 with which to refurnish the hotel. The hotel was to be reconveyed to plaintiff for her old age, and it was implied that the same was to be done in the event that anything happened to the decedent or at such sooner time in the event he did not need the property for his financial statement.

At the close of plaintiff's case, the trial court granted defendant's motion for judgment " * * * on the ground that the plaintiff had wholly failed in the proof of the material allegations of the complaint by any evidence, let alone any clear and convincing evidence * * *." Plaintiff's subsequent motion for a new trial supported by affidavits of newly discovered evidence was denied, and the appeal herein was taken.

Plaintiff's assignments of error can be summarized as follows:

1. The trial court erred in granting defendant's motion for judgment.

2. The trial court erred in denying plaintiff's motion for new trial, which was accompanied by evidence that was newly discovered.

It is contended that the court erred in granting defendant's motion for judgment at the close of the plaintiff's case, and that a motion for judgment by the defendant after the plaintiff has completed the presentation of his case is synonymous with a motion for dismissal under Rule 41(b) of Rules of Civil Procedure, 16 A.R.S. The defendant, appellee, after oral argument presented a supplemental list of authorities, and relied heavily on Chadwick v. Larsen, 75 Ariz. 207, 254 P.2d 1020, *in which this court held that on a motion to dismiss after the plaintiff has rested his case, the trial court has the power to weigh evidence,* and need not completely disregard conflicting evidence *or view evidence in the light most favorable to the plaintiff.* The Chadwick case, supra, was decided by this court in March, 1953, and is not applicable to the case at bar because on June 18, 1955, this court amended Rule 41(b) as follows:

"* * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff at the close of the plaintiff's case, the court shall, *without prior request,* make findings as provided in Rule 52(a). * * *" (Emphasis supplied.)

This amendment conforms with the amendment to the Federal Rules of Civil Procedure promulgated in 1948 (except for the underlined phrase "without prior request"). The portion of Rule 52(a) with which we are concerned in this case is as follows:

"In all actions tried upon the facts without a jury or with an advisory jury, the court, if requested before trial, *shall find the facts specially and state separately its conclusions of law thereon* and direct the entry of the appropriate judgment. * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. * * *" (Emphasis supplied.)

Rule 52(a) required the trial court to find the *facts specially* and *state separately* its conclusions of law thereon, only where it has been so requested before trial. Rule 41(b) required the trial court to make findings as provided in Rule 52(a) "without prior request", thereby negating that portion of Rule 52(a) which demands special findings only where the trial court has been so requested before trial.

Rule 52(a) of Arizona Rules of Civil Procedure differs with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in that under the Federal Rules, the trial court is required to find fact specially in all cases, even though there may have been no request made by counsel prior to trial.

The purpose of the aforementioned amendment to Rule 41(b) was to incorporate into the rule the reasoning of the Sixth, Seventh and Ninth Circuit Courts of Appeal. See particularly 2 Barron and Holtzoff, Federal Practice and Procedure 644; 3A id. 466; Young v. United States, 9 Cir., 111 F.2d 823; Gary Theatre Co. v. Columbia Pictures Corporation, 7 Cir., 120 F.2d 891; Bach v. Friden Calculating Mach. Co., 6 Cir., 148 F.2d 407; Mateas v. Fred Harvey, 9 Cir., 146 F.2d 989. These three courts of appeal held that since the judge is the trier of the facts in an action tried without a jury, he need not treat a motion to dismiss as a motion for a directed verdict. These decisions further held that the trial judge in deciding on a motion to dismiss at the end of plaintiff's case could pass on the credibility and conflicts of evidence, and grant the motion on the merits, provided special findings were made.

Prior to the 1948 amendment to Rule 41(b) some of the Federal Courts had held contrary to the aforementioned opinions of the Sixth, Seventh and Ninth Circuit Courts of Appeal, and decided that a motion to dismiss in a non-jury case had to be treated as a motion for a directed verdict in a jury case. Under the reasoning of the Sixth, Seventh and Ninth Circuit Courts, prior to the 1948 amendment, the trial court was not required to wait until the close of all of the evidence to rule on the merits, when the plaintiff failed to prove his case in the mind of the trial judge, acting as the trier of the facts.

The trial court in the instant case failed to make *special findings of fact and state separately its conclusions of law thereon.* Hence we have no alternative but to treat defendant's motion for judgment the same as we would treat a motion for a directed verdict in a jury case. Makowsky v. Povlick, 3 Cir., 262 F.2d 13. In treating defendant's motion for judgment as a motion for directed verdict, this court has spoken on many occasions, the last of which was in the case of Figueroa v. Majors, 85 Ariz. 345, 346, 338 P.2d 803, 804:

" * * * a motion for a directed verdict for the defendant admits the truth of whatever competent evidence the opposing party has introduced, including all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to opposing party."

In the light of our repeated holdings, we are faced with the question as to whether the plaintiff here established a prima facie case for the court to impose a constructive trust. The transcript discloses that plaintiff and her deceased brother were in a confidential relationship during their entire life together from the time decedent was brought from his native Lebanon to the home of the plaintiff in New York. There is testimony that the plaintiff (of Syrian language and nationality) did not understand nor comprehend and write the English language except with much difficulty.

In addition to the testimony of the plaintiff, five other witnesses gave testimony tending to establish the plaintiff's claims. Four of the witnesses testified to various admissions made by the decedent over a period of years that the hotel belonged to his sister. All five of the witnesses testified to the close and confidential relationship between plaintiff and deceased, all of which, construed in the light of the whole testimony, established clearly a fiduciary relationship.

Considering the well-established rule of this court that the defendant on a motion for directed verdict admits the truth of whatever competent evidence the opposing party has introduced, and the reasonable inferences to be drawn therefrom, the question becomes, did the plaintiff herein make out a prima facie case? We think she did. The most recent expression of this court in November, 1959, in Golfinos v. Southern Pacific Company, 86 Ariz. 315, 318, 345 P.2d 780, 781, states:

"This Court has consistently held that the trial court is justified in directing a verdict only where the evidence is insufficient to support a contrary verdict or so weak that the Court would feel constrained to set aside such a verdict on a motion for a new trial."

Where circumstances appear which render it unconscionable for the holder of legal title to retain and enjoy a beneficial interest, equity on the theory of implied fraud, impresses a constructive trust on property thus acquired in favor of one who is truly equitably entitled thereto.

In the recent case of Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786, the court held that when a confidential relationship is shown to exist between two parties, even though no active fraud by the grantee in procuring of a conveyance be shown, the

mere existence of such confidential relationship, when coupled with the promises to reconvey, created a constructive trust. In the instant case, it appears that the facts more clearly establish a constructive trust than the facts in the foregoing case of Murillo v. Hernandez. The mere relationship of brother and sister does not of itself warrant the conclusion of the existence of a confidential relationship; but such relationship is an important factor bearing on the existence of a confidential relationship. In most cases in which such a trust has been established, it appears there has been shown in addition to family relationship, age and infirmity on one hand, actual dominance on the part of the grantee, an established course of management of the grantor's affairs by the grantee, or other similar facts making it inequitable to allow the grantee to prevail.

The assignment of error as to the failure of the court to grant a new trial based upon affidavits of newly discovered evidence need not be considered here for the reasons hereinabove set out.

Reversed and remanded for a new trial.

STRUCKMEYER, C. J., and PHELPS and UDALL, JJ., concur.

BERNSTEIN, J., having disqualified himself, the Honorable ROSS F. JONES, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

JOHNSON, Justice (dissenting).

I am unable to agree with the conclusions reached in the majority opinion and therefore register my dissent.

It is established beyond question in this jurisdiction that while a constructive trust may be established by parol evidence, such evidence must be clear and convincing, not doubtful, uncertain and contradictory. It must be full, clear, and satisfactory. Smith v. Connor, 87 Ariz. 6, 347 P.2d 568; Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786; Stewart v. Schnepf, 62 Ariz. 440, 158 P.2d 529; Costello v. Gleeson, 19 Ariz. 532, 172 P. 730; Costello v. Cunningham, 16 Ariz. 447, 147 P. 701 and Butler v. Shumaker, 4 Ariz. 16, 32 P. 265.

It would serve no useful purpose to detail the testimony of the witnesses in the lower court, however, I believe a brief summary of the evidence will well illustrate that the appellant utterly failed to prove a constructive trust as required by the settled principles of law.

The decedent, George F. Tibsherany, obtained a deed to the subject property in 1931, which on its face was an absolute and unconditional conveyance and that he con-

tinued to be the sole record owner of such property until his death in 1954.

There is a presumption that the holder of the legal title owns the full beneficial interest in the property and that the evidence to overcome this presumption and establish that the property is held in trust must be clear and convincing. Glasgow v. Andrews, 129 Cal.App.2d 660, 277 P.2d 400; In re Schechtman's Estate, 162 Cal.App.2d 365, 328 P.2d 478 and Rench v. McMullen, 82 Cal.App.2d 872, 187 P.2d 111.

The record before us discloses that the complaint of the appellant, Anna M. Joseph, alleges that decedent purchased a mortgage on the hotel property involved, later acquiring title in his name, under an alleged agreement made in January, 1931, that such property be held in trust for the use and benefit of appellant. The testimony of appellant given in court twenty-six years after the transaction was alleged to have been made and after the death of George F. Tibsherany, reveals that the appellant never during the intervening years made any claim or exercised any control over the property in the presence of her brother and any third party.

The appellant explained the agreement with her brother as follows:

"Q. Mrs. Joseph, just so we can get this clear, I wish you would in your own words please explain to the Court what this agreement was between you and your brother.

"A. He leave the hotel to me and $200 a month income. I said, 'Maybe the hotel wouldn't, because lots of times you don't make 200 from the hotel.'

"Well, he said, 'I leave you'—and that is my hotel—he leave it for me; if I don't make enough in the hotel, he leave me $200 with it so I can make it, because I loaned him more money than what I loaned him for the hotel, what I bought my hotel with. I give him $36,000, all my lifetime work, and he got rich."

*     *     *     *     *     *

"Q. Now, Mrs. Joseph, can you tell us whether or not your brother—in other words, just tell the Court what understanding you and your brother had if you would leave hotel in his name. What did he tell you if you did that?

"A. He said if I leave the hotel in his name for his finance, he will give me $200 with it, and that the hotel is mine anyhow, but for his financing, you know, if I leave it in his name, he will give me $200 with it. I said, 'The hotel will never make that much.' He says, I will give you $200."

Considering this testimony in the light most favorable to the appellant, it fails to

meet the requirements and the conditions we stated in Costello v. Cunningham, supra, [16 Ariz. 447, 147 P. 714.] that must exist; we said in that case: " * * * A common requirement is that the evidence be clear, explicit and convincing, not only as to the existence of the trust, *but as to its terms and conditions*". In my opinion the evidence in the case at bar cannot be clear, explicit and convincing as required by our decisions, and I agree with the frequent quoted statement that oral testimony of oral statements against interest made by deceased persons many years before is the weakest of all evidence. Fagan v. Fisher, 74 Colo. 473, 222 P. 647; Ward v. Ward, 197 Okl. 551, 172 P.2d 978 and Buxbaum v. Priddy, Okl., 312 P.2d 961.

Besides the testimony of appellant all the evidence is built upon alleged declarations of the decedent to mere strangers to the transaction, some alleged to have been made nearly twenty-five years ago, and it is probable that after the lapse of such a period the memory would be inaccurate as to the facts and conditions of the transaction. These alleged statements were made in chance conversations to persons who would have no occasion to accurately remember or perfectly recall the conversations allegedly made. No one of the witnesses testified that Tibsherany ever intimated he was holding the hotel in trust for the use and benefit of the appellant, or that he was to pay her $200 a month for life by reason of the absolute title being in his name.

There is, moreover, another substantial reason disclosed by the record that cast suspicion upon the position taken by the appellant in the present action. At the time the last will and testament of George F. Tibsherany was offered for probate the appellant in the instant matter filed a contest to the admission of the will, alleging that while the real property herein involved belonged to the estate of George F. Tibsherany, nevertheless, she was entitled to receive it by virtue of an alleged prior will. The court denied her contest and the will was admitted to probate. Thereafter the present action was filed and the appellant took the inconsistent position, that the decedent had for twenty-six years held the property in trust for her use and benefit. The trial court undoubtedly, and I believe properly so, considered the appellant's testimony to be seriously impaired by the fact that she first assumed an inconsistent and opposite theory from that advanced in the case at bar and being unsuccessful in that action, then sought to obtain the property under an alleged trust.

I am in accord and approve the statement contained in Turman v. Ellison, 37 Cal.App. 204, 174 P. 396, 398, as follows:

"* * * Indeed, it is true that actions to enforce oral agreements claimed to have been made with persons who. .

**214**

are dead involve a dangerous assault upon property rights, and they are often supported by false testimony, and they naturally and reasonably excite suspicion. And while they may be genuine and worthy of confirmation, they require the closest and most careful scrutiny to prevent injustice being done. (Citing cases.) They afford and carry opportunity for fraud against the estates of deceased persons and a great temptation to perjury on the part of disappointed or avaricious relatives".

After a full consideration of the record I reached the conclusion, as did the trial court, that the evidence taken in the light most favorable to the appellant falls far short of the requirements necessary to justify the overthrow of a deed absolute on its face, for the presumption is that such a deed is what it purports to be and there should not be a finding to the contrary unless the evidence is almost overwhelmingly the other way. Spaulding v. Jones, 117 Cal.App.2d 541, 256 P.2d 637 and Lombardi v. Tranchina, 129 Cal.App.2d 778, 277 P.2d 938. The security of titles and sound public policy require such a rule.

Appellant having failed to support the allegations of her complaint by evidence that was clear, cogent and convincing which is necessary to establish a constructive trust I would affirm the judgment of the lower court.