[Civ. No. 11028. First Appellate District, Division Two.—March 21, 1939.]

ALICE MAUD DAVIS, Respondent, v. A. L. STEWART, Appellant.

Carlos R. Freitas and Leander L. James for Appellant.

Martinelli & Gardiner for Respondent.

NOURSE, P. J.—The defendant appeals from an adverse judgment holding that a deed absolute in form was in fact an equitable mortgage. The grounds of the appeal are that the evidence does not support this finding, and that as the defendant extinguished the debt which the documents are claimed to have secured when, under the same agreement, he dismissed with prejudice a pending suit to foreclose a lien

upon the property for that debt, there is no mortgage secur-
ing the indebtedness which plaintiff concedes is unpaid. Ob-
jection is also made to the order of the trial court charging
the defendant with negligence in the operation of the prop-
erty and his failure to procure adequate rental and income
while in possession, as a result of which the obligation, which
the trial court held was secured by the transfer, was reduced
something over $2,000. The real property was owned jointly
by the plaintiff and her husband both of whom executed the
documents herein involved. Thereafter the husband con-
veyed all his interest to the wife, and she alone sues as plain-
tiff.

The first point raised by the appellant is the one which
presents the real difficulty. The undisputed facts are that
the plaintiff and her husband, while in possession of the
property which is located on the San Rafael highway at its
junction with the San Quentin highway and occupied by a
filling station and auto rental camp, were deeply in debt
upon obligations, some of which were secured by liens upon
the property. They were also obligated to the defendant in
the sum of $6,788 for work and labor performed on the prem-
ises, which sum was the subject of a mechanic's lien filed
upon the property, suit to foreclose which was pending at
the time of the agreement hereinafter referred to. The
owners had endeavored to secure a loan from local banks to
finance their property, but this assistance was denied them,
and on September 27, 1932, an agreement prepared by their
respective counsel was executed by these owners with the
defendant, reciting these various obligations and encum-
brances upon the land. In this contract the defendant agreed
to dismiss with prejudice his action to enforce his mechanic's
lien and to pay off and cause to be released all existing liens
and encumbrances upon the property, and in consideration
therefor the owners agreed to sell, assign and transfer by
good and sufficient deed all their rights and interest in the
property. The defendant agreed to give to them an option
to repurchase the property for the total sum of ''$13,479.29,
plus all recording charges, title insurance charges, taxes and
other assessments, insurance of all classes on said property,
including public liability insurance, attorney's fees, court
costs and other charges reasonably convenient and/or neces-

sary for the maintenance and preservation of said property . . . together with interest thereon at the rate of 7% per annum from date of each respective advance or investment by first party until date of the exercising of said option''. It was further provided that all income produced by said property should be applied first to the payment of expenses of operation and that the remainder thereof ''shall be applied on such purchase price as a credit thereon to the second party upon the exercise of said option''.

The stipulation in the contract upon which the appellant strongly relies reads: ''It is understood and agreed that first party shall become, upon execution and delivery of said deed the absolute owner of said property, together with all improvements thereon and that this transaction does not constitute a mortgage, subject only however to said option for said five year period.'' It appears that on the execution of the contract the defendant entered into immediate possession of the premises, caused his action to foreclose his lien to be dismissed with prejudice, borrowed sufficient money to pay off all other liens and encumbrances against the property as required by his contract and employed plaintiff's husband to manage the property as his agent, which he did until February 15, 1933. He then voluntarily retired as agent and employee of the defendant. There was no agreement between the parties, and no request on the part of the plaintiff, that the defendant assume possession of the premises as mortgagee. From the delivery of the documents the defendant took possession as grantee and owner with the full consent and acquiescence of the former owners. We find no material conflict in the evidence. It is agreed that the parties executed the documents with full and independent legal advice. There is no suggestion of fraud, misrepresentation or unfair advantage on the part of the defendant. There is no evidence that the plaintiff or her husband misunderstood the terms or the legal effect of their deed. The plaintiff was not placed upon the witness stand to tell her intention. The testimony of the defendant as to the mutual intention of the parties stands uncontradicted, except to the extent that plaintiff's husband testified in reference to the stipulation in the agreement that the transaction did not constitute a

mortgage: "I have studied law myself; I knew they were just words."

Briefly the appellant presents a case where the written declaration of the parties and *all* the competent evidence in reference to the intention of the parties discloses that the transaction was intended to be an absolute transfer. The respondent shows no more than that one of those who engaged in the transaction had the undisclosed intention to treat it differently. The appellant relies upon *Harp* v. *Harp*, 136 Cal. 421 [69 Pac. 28], and authorities cited in 17 California Jurisprudence, pages 742, 754–756 holding that, when the intention of the parties is clear from the language of the instrument, a deed will be construed to be a mortgage only upon clear and satisfactory proof thereof. The rule is thus stated in 41 Corpus Juris, page 332: "But in order to convert a deed absolute in its terms into a mortgage it is necessary that the understanding and intention of both parties, grantee as well as grantor, to that effect be concurrent and the same. A mere secret intention on the part of one of the parties, not disclosed or communicated to the other, will not have the effect of changing the character of the transaction."

Applying these rules to the case at hand we find a preliminary written contract wherein the parties agree to execute a deed absolute and also agree that the transaction is intended to be an absolute transfer of title and possession and not a mortgage. This is followed by the execution and delivery of a deed absolute, by the delivery and transfer of possession. The only competent evidence of the intention of the parties at the time of the transaction is in harmony with that expressed in the agreement. There is no evidence of fraud, misrepresentation or unfair advantage taken of the debtors. The evidence of the secret intention of one of the parties, not disclosed to the other, will not have the effect of changing the character of the transaction. "Still less, of course, will this result where the parties testify to directly contradictory intentions." (*Wehle* v. *Price*, 202 Cal. 394, 397 [260 Pac. 878]; 41 Cor. Jur., pp. 331, 332.)

By the terms of the agreement of September 27th the appellant undertook to "cause all liens and encumbrances now existing against said property . . . to be released and withdrawn, either by payment of moneys or otherwise" and,

in consideration therefor, the owners agreed to "sell, assign and transfer by a good and sufficient deed" all their interest in the property. The owners did not, either by this agreement, or otherwise, undertake to repay the appellant the amount of his lien for $6,788 or the amount of the other existing debts which appellant paid for them. If the owner had treated the transaction as a mortgage and had sought to foreclose it, the answer would have been that there had been a retraxit as to the claim of $6,788 by his voluntary dismissal with prejudice, and that there was no promise, written or oral, to pay the moneys advanced to satisfy the other liens except the promise to pay those sums *if and when* the owners should elect to exercise their option. It should also be noted that there was no obligation to pay interest during the five year period unless the option was exercised, and that *all income* from the property went directly to the vendee from the date of transfer. Thus if appellant should have elected to treat the transaction as a mortgage and had sued to foreclose, he would have been met by the answer that it presented none of the elements of a mortgage, and that the only *obligation* assumed by respondent was to pay the stipulated purchase price if and when she elected to exercise the option to purchase. When we add these facts to the written declaration of the intention of the parties, the delivery of immediate possession to the appellant, and the complete lack of any express obligation on the part of respondent to repay any portion of the principal sum or any interest thereon if the option should not be exercised, we have nothing but a simple sale and delivery of the entire fee, with an option to repurchase. Such a transaction is not unusual and is not contrary to public policy. In the absence of fraud, misrepresentation, or unfair dealing, the courts will uphold the contract of the parties as written. Discussion of other points is not necessary.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 20, 1939, and an application by respondent to have the cause heard in the Supreme

Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939. Curtis, J., and Houser, J., voted for a hearing.