[Civ. No. 4800. Fourth Dist. Dec. 17, 1954.]

ROY E. GLASGOW et al., Appellants, v. MARK E. ANDREWS, Defendant; FRANK J. O'CONNOR et al., Respondents.

Desmond & Desmond for Appellants.

Harry Polglase and Otto A. Jacobs for Respondents.

BARNARD, P. J.—The plaintiffs appeal from a judgment holding that a grant deed was not, in fact, an equitable mortgage.

The plaintiffs owned an apartment house in Long Beach which was encumbered by a first trust deed of $54,000, and a second trust deed in favor of the defendant Andrews for $22,000. On August 8, 1950, the plaintiffs deeded that property to Andrews. On the same day Andrews traded that property, and another property in which he owned an equity, for a motel at Newport Beach called the "Balport Motel." This motel was encumbered by a first trust deed for $43,000 and a second trust deed for $50,000. Title to the motel was taken in the name of Andrews and his wife, but it was agreed between them and the plaintiffs that the plaintiffs had an

interest in the motel proportionate to the respective equities of the parties in the two properties which had been traded for the motel. It was the plan of the parties that the motel would be sold at an early date and the proceeds used to build an apartment building in which Andrews and the plaintiffs would have the same ratio of interest as in the motel. Pending such a sale plaintiffs moved into the motel and served as managers thereof, collecting the rents and turning them over to Andrews.

The parties got into financial difficulties two months later, and were soon in default under the trust deeds on the Balport property and on the payment of taxes. They were unsuccessful in their efforts to sell the property or to borrow money with which to meet the obligations which had become due. The holder of the second trust deed, having made certain payments to protect his interests, gave notice of foreclosure and sale under that trust deed.

On or about March 10, 1951, Andrews entered into negotiations with the defendants O'Connor, as a result of which they entered into an escrow whereby the O'Connors agreed to buy the Balport property for $97,754.89. The O'Connors deposited $6,600 in this escrow and agreed to take the property subject to the trust deeds. Contemporaneously therewith, the O'Connors gave Andrews an option to purchase the property for $7,500, plus any amount thereafter paid by the O'Connors for taxes or on the trust deeds, provided that amount was paid on or before June 12, 1951; and further providing that Andrews should pay all expenses, that the option should be void if not exercised by June 12, 1951, and that if Andrews should find a purchaser for said property before June 1, he should allow the O'Connors the right, within five days after notice, to cancel the option and retain the property upon paying the optionees the amount offered by such a purchaser. The delinquent payments and expenses on the trust deeds and the taxes were immediately paid from the escrow funds, and a rescission of the notice of default and election to sell under the trust deed was recorded. The O'Connors also put up additional funds, to pay certain other expenses and to release an attachment which Andrews was unable to do, taking a note from Andrews for that amount. A grant deed conveying the property from Andrews and his wife to the O'Connors was recorded on March 27, 1951. On March 12, 1951, Andrews notified the holder of the first trust deed in writing that he had sold this property to the O'Connors, and on the same

day he gave the O'Connors a statement that he had sold them this property and that they were authorized to collect any and all rents or income from and after March 13, 1951. The O'Connors showed this writing to the plaintiffs on the same day and took possession of the property, arranging with the plaintiffs to continue to manage the property at stipulated salaries which he paid, together with all operating expenses, until the plaintiffs left that employment about June 1, 1951.

The option was not exercised by June 12, 1951, or at any other time, and this action was brought on December 3, 1951. In addition to the general facts, the court found that it was not true that the plaintiffs' equity in the Long Beach property which they had deeded to Andrews was of the value of $46,000, and that the plaintiffs had failed to introduce any evidence establishing the value of their said equity; that the deed from Andrews and his wife conveying the Balport property to the O'Connors was an absolute deed and was not given as security for any sum of money or otherwise; that the option given by the O'Connors to Andrews was made upon the conditions set forth therein; that this option was never exercised, expired on June 12, 1951, and was of no force or effect after that date; that it is not true that the giving of this deed to the O'Connors and the option to Andrews was done without the knowledge of the plaintiffs; that it is not true that when this deed and option were given the O'Connors knew that the plaintiffs had an equitable interest in the Balport property; that the value of the Balport property did not exceed $125,-000 at any time prior to the trial, which began on April 30, 1952; that it is not true that the deed to the O'Connors was based upon an inadequate consideration; that the O'Connors purchased this property in good faith and for value, and said purchase was made without notice that any of the plaintiffs had or claimed any interest in the property; that this deed conveyed full title to the O'Connors; and that Andrews has had no interest whatsoever in the property since March 12, 1951, except an option of purchase which expired on June 12, 1951, without being exercised by Andrews or by anyone else. The plaintiffs have appealed from the judgment which followed.

Appellants' main contention is that the court erred in holding that appellants and defendant Andrews had no right, title or interest in this property, and in holding that the transfer to respondents was a deed absolute and not a mortgage. It

is argued that the only credible substantial evidence compels the conclusion that the deed thus given was an equitable mortgage; that the evidence established the fact that appellants had an equity of $46,000 in the Long Beach property which they conveyed to Andrews, and a corresponding equity in the Balport property; that the Balport property was worth at least $125,000 and the consideration for the transfer to the respondents was highly inadequate; that this transfer was made under threat of an immediate foreclosure, and the consideration therefor was a debt subsisting after the conveyance; that the giving of the option to repurchase shows that the conveyance was a mortgage; and that the finding that the option is now of no effect is not supported by the evidence.

It is well settled that there is a strong presumption that the holder of the legal title owns the full beneficial interest in the property, and that evidence to overcome this presumption and establish that the deed is in fact a mortgage must be clear and convincing. (*Rench* v. *McMullen,* 82 Cal.App. 2d 872 [187 P.2d 111]; *Beeler* v. *American Trust Co.,* 24 Cal. 2d 1 [147 P.2d 583].) In the latter case, it is pointed out that the question as to whether the evidence offered to change the ostensible character of the instrument is clear and convincing is one for the trial court to decide, and that the decision of that question by the trial court upon conflicting evidence is not open to review on appeal. It was pointed out in *Pallett* v. *Pallett,* 123 Cal.App. 701 [11 P.2d 898], that courts of equity are loath to hold that a deed which is absolute in its terms is a mere mortgage unless satisfactory and convincing evidence to that effect is produced. The mere fact that an option to repurchase is given at the same time is not sufficient, of itself, to establish the fact that a mortgage was intended by the parties. (*Garwood* v. *Wheaton,* 128 Cal. 399 [60 P. 961]; *Thompson* v. *Mansfield,* 84 Cal.App. 560 [258 P. 702]; *Davis* v. *Stewart,* 31 Cal.App.2d 574 [88 P.2d 734].)

There is ample evidence to support the findings that the respondents did not know that the appellants claimed any interest in this property, and that the appellants had knowledge of the manner in which Andrews was conveying the property to the respondents and taking back an option. The testimony of the respondents was positive to the effect that Mr. O'Connor refused to make a loan, and refused to consider taking a third trust deed because no loan was involved. The appellants were not present when the deal was being negotiated and consummated, and they gave no evidence in

that connection other than to the effect that Andrews told them that the transaction was a loan. A part of Andrews' testimony tends to confirm the respondents' testimony as to the nature of the transaction. Among other things, he testified that Mr. O'Connor consistently refused to take a third trust deed, that he told O'Connor if he was going to lose the property he would rather see O'Connor get it, and that at the escrow office on March 12 "We discussed it pro and con, and we finally worked out the way it was drawn up, but my intention all the time was to have it as a loan." He also testified that at the escrow office they discussed the amounts and terms of the two trust deeds and the taxes, and that "I couldn't understand at the time why Frank was so insistent in getting everything prorated, because at that time I was under the impression I was getting a loan, and he was handling it more or less as a purchase, and that wasn't my idea at all." ▇ The fact that one of the parties may have had a secret intention not disclosed to the other could not have the effect of changing the character of the transaction. (*Wehle* v. *Price*, 202 Cal. 394 [260 P. 878]; *Davis* v. *Stewart*, 31 Cal. App.2d 574 [88 P.2d 734].) In addition to the presumption from the deed itself the main finding is further supported by the language of the escrow instructions, the language of the option, and the two writings signed by Andrews on March 12, 1951, stating that the property had been sold to the respondents on that date.

The consideration for this transfer was not a debt which subsisted after the conveyance, as appears in some cases where the property was conveyed to the party holding the mortgage. The respondents here did not hold either of the trust deeds and had nothing to do with this property or with the indebtedness prior to this transaction. While it appears that O'Connor did hold two notes signed by Andrews, aggregating about $1,000, these were in no way involved in this transaction.

▇ While Andrews made this transfer because a foreclosure of the trust deeds was imminent and because, as he testified, an additional $50,000 would have to be raised to take care of the second trust deed if the delinquencies were not paid up within a day or two, the threat of foreclosure was not made by the respondents, and they were in no way responsible for the situation in which Andrews found himself. There is evidence that the respondents refused to make a loan; that they were willing to buy the property, giving Andrews a limited opportunity to repurchase it at a slightly higher

price; and that Andrews agreed to enter such a transaction hoping to be able to sell the property in the meantime, which would enable him to exercise the option. While there is some inferential evidence to the contrary, any conflict has been resolved by the trial court in favor of the respondents.

The appellants contend that the evidence establishes, without conflict, that their equity in the Long Beach property which they transferred to Andrews was of the value of $46,-000, giving them a proportionate equity in the Balport property, and that the consideration for the deed here in question was highly inadequate since the evidence shows that the Balport property was worth at least $125,000. The question of value and the amount of consideration, while an important element in such a case, is not necessarily controlling and the evidence, with respect to these matters, is not too convincing. There was evidence that Andrews traded the two properties for the Balport Motel, and that each party placed a value of $150,000 upon his own property for the purpose of the trade. There was no evidence as to the actual value of either of the Long Beach properties which figured in that trade. It does appear that the Long Beach property formerly owned by the appellants was subject to trust deeds amounting to $76,000, and that there were no revenue stamps on the deed conveying that property to Andrews, indicating that he paid no cash. Whether or not the appellants would have been able to keep that property and meet the payments on those trust deeds does not appear. While there was opinion evidence that the Balport Motel was worth from $145,000 to $160,000, and evidence that respondents later listed it for sale at a price of $165,000, the property was not sold. There was also evidence that it was worth only about $98,000 when they bought it in March, 1951. There was evidence that the income from the property was not sufficient to meet the payments on the trust deeds, that the taxes were not paid, and that the owners had been trying without success for some six months to sell the property, or to secure a sufficient sum of money to enable them to hold on to it. Andrews testified that having been unsuccessful in raising some $7,000 to enable them to hold it, he entered into the transaction with the respondents because he knew it would be impossible to raise that sum and an additional $50,000 which would become necessary if something was not done within the next day or so. Under these circumstances he entered into this transaction and thereby secured a written option which would give him three months

more in which to try to sell the property. In that he was unsuccessful. In addition to the purchase price the respondents gave him such an option, which was a part of the consideration and which would have enabled him to repurchase the property at a slight profit to the respondents, had he been able to find a purchaser. The evidence as a whole supports the finding that this deed was not based upon an inadequate consideration at the time and under the circumstances shown.

While the evidence discloses a trust relationship between Andrews and the appellants, with respect to this property, it supports the finding that this was not known to the respondents. The evidence supports the findings to the effect that this was a sale and not a loan of money, and that the parties did not intend this deed to be, in fact, a mortgage. While there was a conflict in the evidence it cannot be held, as a matter of law, that the evidence is clear and convincing that a mortgage was intended.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.