FERGUSON, Circuit Judge:
These three consolidated appeals arise out of a complicated series of transactions, in and out of court, over the last decade. William Ellis and parties roughly aligned with him in interest, in various combinations, appeal from three dispositions adverse to their claims to an improved parcel of land in Hawaii known as the Silversword Inn. The first judgment, entered by District Judge King in consolidated adversary proceedings Nos. 72-391(3) and 72-391(4) in a Chapter XII proceeding filed by Ellis in 1972, summarily declared that the defendants-appellees, Herbert and Alberta Loui, are the owners of the subject property and that the other parties to Bankruptcy Nos. 72-391(3) and 72-391(4) have no interest in it. Appeal No. 81-4081. For the reasons stated below, we reverse the judgment and remand the case for further proceedings. The second judgment, a writ of assistance issued by Judge King, directed the marshal to put the Louis in possession of the Silvers-word Inn as against “all and every person and entity holding possession of said premises.” Appeal No. 81-4213. Since we reverse the judgment on which this writ depends, it must be vacated. The third was the oral denial by District Judge Heen of a preliminary injunction sought by three persons not party to the bankruptcy proceedings, and not claiming title through William Ellis, but apparently aligned with him in interest, and apparently in possession of the property. These parties had filed a separate action in the district court seeking a declaration that the judgments issued by Judge King in the bankruptcy proceeding were of no effect as to their interest in and *1240 possession of the property. Although that action is still pending, the plaintiffs appeal from the oral denial of their request for a preliminary injunction against the U.S. Marshal. Appeal No. 81-4318. In view of our disposition of the first two appeals, this third one is moot, and we therefore dismiss it.
FACTS
In March 1971, William Ellis (Ellis) conveyed the Silversword Inn to Bessie Hago-pian, the sister of Lillian Corey (Lillian). Lillian acted as Hagopian’s agent in this transaction. The conveyance was subject to a lease and included an option to repurchase which, with extensions, expired unex-ercised on December 31, 1976. In 1972, Ellis filed a Chapter XII proceeding in the bankruptcy court in Hawaii. Despite the 1971 conveyance, one of the items listed in the bankruptcy estate was the Silversword Inn.
In July 1973, Hagopian conveyed her interest in the property to Lillian. In January 1977, Herbert and Alberta Loui (Louis) and Lillian executed a standard form Deposit Receipt, Offer and Acceptance (DROA) for the sale of the Silversword Inn for $575,000. In accordance with the DROA, the Louis placed $175,000 in escrow. Lillian refused to proceed with the sale on August 1, 1977, the scheduled closing date.
On August 12, 1977, the Louis filed a complaint against Lillian in Hawaii state court for specific performance and damages for breach of contract (Hawaii Civil No. 52308). Among Lillian’s contentions in defense were that Ellis’s transaction with Hagopian was not a sale of the property, but a mortgage transaction in the form of a sale. Thus, Lillian was only a mortgagee and could not convey the property to the Louis. Lillian further argued that the DROA was merely a “try” and that because she could not convey the property, the Louis could not obtain specific performance.
The state court rejected this conclusion, found that Lillian had breached her contract of sale with the Louis, and directed specific performance. In its partial judgment entered on August 7, 1979, the court ordered Lillian to execute an Agreement of Sale in a form which the court specified. The court added that if Lillian failed to perform within ten days, the clerk was ordered and authorized to execute the Agreement of Sale attached to the judgment.
When Lillian failed to perform, the clerk executed the Agreement of Sale and delivered it to the Louis, who signed it, delivered it to escrow, and recorded it. According to the Louis and uncontroverted by Lillian, Ellis paid some or all of Lillian’s attorneys’ fees in the state action and consulted with Lillian and her attorneys throughout the trial.
Lillian appealed the partial judgment to the state supreme court, but did not obtain a stay of the judgment at that time. On November 9, 1979, the Louis obtained from the state court a writ of assistance to obtain possession of the property. However, the writ was eventually returned unexecuted. Ellis had warned the sheriff that he or any deputy sheriff entering the property would be liable for trespass if entry was made under color of the writ. Ellis stated that he was the lessee, the Sword, Inc., was his sublessee, the Silversword Trust was the lessor, and that none of them held by, under, or through Lillian Corey, the only defendant in the state action.
The Sword, Inc. brought a separate action in the state court claiming to be in possession of the property and requesting an injunction against execution of the writ of assistance. The complaint was signed by Florence Ellis, Ellis’s wife and president of The Sword, Inc. This action was later dismissed voluntarily. In the meantime, on December 3, 1979, Lillian filed in state court her own suit against the Louis. She requested declaratory and injunctive relief, claiming that the writ of assistance was improper because The Sword, Inc., which was in possession of the property, was not a named party in the Louis’ state court action and had no relationship to her. Lillian’s complaint was sua sponte dismissed with prejudice.
*1241 On October 24, 1979, Ellis filed in his bankruptcy proceeding a Complaint to Determine Lien against Lillian. Bankruptcy No. 72-391(3). The complaint sought relief on the “mortgage theory” previously raised by Lillian in defense of the Louis’ state court specific performance action. Lillian appeared and admitted all allegations in Ellis’s complaint and did not oppose the subsequent motion for judgment on the pleadings. At least from this point on, Judge King, a federal district judge, sat by designation as the bankruptcy judge in the Ellis matter. Judgment on the pleadings was filed on December 7, 1979 and was recorded the same day with the State Bureau of Conveyances.
The Louis were unaware of Ellis’s complaint and judgment until February 25, 1980, when Ellis, Lillian, and entities controlled by Ellis and claiming interest in the property through Ellis (e.g., Silversword Trust) filed in Ellis’s bankruptcy proceeding a complaint against the Louis to Determine Liens and Other Interests in Property. Bankruptcy No. 72-391(4). The bankruptcy court granted the Louis leave to intervene in Bankruptcy No. 72-391(3) and vacated the December 7, 1979 judgment on the pleadings. Bankruptcy Nos. 72-391(3) and 72-391(4) were consolidated. Ellis’s consolidated amended complaint included all claims from the separate complaints in Bankruptcy Nos. 72-391(3) and 72-391(4) and named Lillian and the Louis as defendants. Lillian filed an answer admitting all allegations, but later added a cross-claim against the Louis, incorporating six counts of Ellis’s consolidated amended complaint. The Louis answered Ellis’s consolidated amended complaint and filed a counterclaim and cross-claim seeking to determine their rights as against the other parties to the proceeding.
On September 12, 1980, the bankruptcy court issued a ruling that the March 1971 conveyance by Ellis to Bessie Hagopian was a transfer of fee simple title and not a mortgage transaction. An implied corollary of that ruling was that Lillian was owner of the Silversword Inn and that none of the plaintiffs, including the bankrupt, had any interest in the property.
While the above matters were pending in the bankruptcy court, on September 4, 1980, Lillian, in connection with her appeal of the state court judgment obtained against her by the Louis, filed in the Hawaii Supreme Court an Application for Ex Parte Order Granting Leave to Deposit Cash in Lieu of Supersedeas Bond. The application was opposed by the Louis. However, on October 2, 1980, the Hawaii Supreme Court granted Lillian’s motion with the proviso that if the Louis prevailed on appeal, “any legal damages suffered by Appellees as a result of the stay of execution and in excess of the $1,000 deposit shall be deducted from the escrow amount and the subsequent purchase payments otherwise payable by Ap-pellees.”
Armed with the Hawaii Supreme Court stay of execution, Lillian argued that the Louis’ further participation in the bankruptcy proceedings violated the state court stay, even though they were originally brought into the bankruptcy court by Ellis’s and Lillian’s complaint in February 1980. On October 20, 1980, Lillian filed in the Hawaii Supreme Court a motion to hold the Louis in contempt. Following opposition by the Louis, the motion was voluntarily withdrawn. She subsequently moved for an injunction in support of the supersedeas to restrain the Louis from participating in the bankruptcy proceeding. After the Louis responded, Lillian voluntarily withdrew this motion.
Lillian also filed a motion in the bankruptcy court to stay proceedings based on the state court stay. However,- the bankruptcy court refused to grant a stay. As the bankruptcy proceedings neared the entry of a judgment adverse to Lillian, Lillian filed in this court a petition for writ of mandamus to prohibit Judge King from entering a judgment in the bankruptcy proceedings. In mid-January 1981, a panel of this court denied the petition without prejudice to Lillian’s seeking a stay pending review in the “appropriate court should the bankruptcy court take further action on the proposed judgment....”
*1242 The bankruptcy court entered judgment on March 10, 1981, ruling in paragraph 1 in favor of the Louis on all counts of plaintiffs’ consolidated amended complaint, and in paragraph 2 in favor of the Louis and against Lillian on all counts of Lillian’s cross-claim. In paragraph 3, the court ruled in favor of the Louis as follows:
i. The Louis are the owners of the property described in Exhibit 1 hereto (“the property”) under an Agreement of Sale between Corey, as seller, and the Louis, as purchasers;
ii. The Debtor herein, the trustee for the estate of the Debtor, and Additional Counterclaim Defendant Kulalani, Ltd. have no ownership interest or any other interest in the property;
iii. Plaintiffs Silversword Trust, Robert P. Shaw, and Pauline L. Shaw have no mortgage interest or any other interest in the property;
iv. Plaintiff The Sword, Inc. has no leasehold interest or any other interest in the property;
v. Plaintiff Upland Investments, Ltd. has no mortgage interest or any other interest in the property; and
vi. The Louis are entitled to possession of the property as against Plaintiffs and Additional Counterclaim Defendant Ku-lalani, Ltd., and their transferees during the pendency of these adversary proceedings, if any, from March 5, 1980, the date upon which the Lis Pendens filed in Bankruptcy No. 72-391(3) on March 3, 1980 was recorded with the Bureau of Conveyances of the State of Hawaii.
The bankruptcy court further directed plaintiffs (by this time, Lillian had been redesignated as a defendant) and counterclaim defendant Kulalani, an alleged alter ego of Ellis, to deliver possession of the property to the Louis forthwith and enjoined the same parties from recording with the state Bureau of Conveyances any document depending for its validity on the “mortgage theory” already rejected by the bankruptcy court.
Kulalani had come into the picture on September 1, 1980, when Ellis conveyed his interest in the property to Kulalani for a purchase price of $766,475.77. The conveyance was intended to maintain between Lillian and Kulalani the mortgagee-mortgagor relationship that purportedly had existed between Lillian and Ellis.
Lillian and the plaintiffs in the bankruptcy proceeding filed a notice of appeal from the bankruptcy court’s adverse rulings on February 12, 1981,[1] which was followed by a flurry of motions in the bankruptcy court and here for stays, and joinders in the appeal by other parties.[2] On March 26, a motions panel of this court entered the following order:
*1243 The court finds that the notice of appeal filed on February 12, 1981, February 19, 1981, and March 12, 1981 [amended notices of appeal] were timely, but were incorrectly directed to this court rather than to the district court. Therefore, the appeal is dismissed for lack of jurisdiction and the notices of appeal shall be forwarded by the clerk of this court to the district court for processing. Appellants’ emergency motion for stay pending appeal is denied as moot, since this court lacks jurisdiction over the appeal. This order is without prejudice to appellants moving for further relief in the district court.
Appellants moved for reconsideration of the dismissal contending that orders entered by a district judge sitting as a bankruptcy judge are appealable to the court of appeals. They also pointed out that another appeal arising in Ellis’s bankruptcy proceedings but involving a different piece of property and a different claimant raised the same jurisdictional question. Ellis v. Cassi-dy, No. 80-4021.
Since this court would have to reach the jurisdictional issue as part of the merits of appeal No. 80-4021[3] and because the motion for reconsideration appeared to have some merit,[4] on April 23 the motions panel directed that appeal No. 81-4081 be reinstated. Because of the common jurisdictional issues, the panel added that appeals Nos. 80-4021 and 81-4081 should be heard by the same merits panel. The court also denied appellants’ emergency motion for stay and alternative emergency motion for stay. At that point, it still appeared that Lillian (through the state court stay) and Kulalani (through the bankruptcy court’s stay with a bond)[5] would be protected from the Louis’ attempts to obtain possession against them. However, this court did not know who was actually in possession.
No stay of the bankruptcy court’s judgment having been obtained, on April 13 the Louis filed in the bankruptcy court a motion for issuance of writ of assistance to obtain possession of the Silversword Inn. Hoping to obtain the blessing of the Hawaii Supreme Court, on April 10 the Louis filed in that court a Motion for Determination of Scope of Supersedeas. The Louis represented to the bankruptcy court:
Although the Louis request that this Court order the immediate issuance of the Writ of Assistance, the Louis will not deliver the Writ of Assistance to the Marshal of the District of Hawaii until the Supreme Court of the State of Hawaii . determines that the state court stay does not preclude the United States Bankruptcy Court for the District of Hawaii from enforcing its Judgment by putting the Louis in possession of the property as against parties other than Lillian Hagopi-an Corey.
The motion for issuance of the writ was opposed by Lillian Corey. She argued that the proposed writ was overbroad because it gave the marshal authority to remove not only parties to the proceeding[6] but “all and every person and entity holding possession of said premises.” In fact, non-parties were in possession. She also contended that because the Louis agreed to be bound by the Hawaii Supreme Court’s stay, the writ was premature.
Without waiting for any ruling by the Hawaii Supreme Court on the Louis’ Motion for Determination of Scope of Supersedeas, but aware of the Louis’ representation that the writ would not be served until they obtained a determination from the Hawaii Supreme Court, on April 20 the bankruptcy court issued the writ. The court orally noted, however, that there might be a problem getting the marshal to remove nonparties from possession. Lillian immediately *1244 appealed to this court the April 20 order. No. 81-4213.
On April 28, Lillian Corey served on the U.S. Marshal a document requesting the marshal to return the writ unexecuted and to post a $750,000 bond to indemnify her for damages for interference with her rights to the property. The marshal refused to post the bond.
On May 19, the Hawaii Supreme Court issued the following order on the Louis’ motion:
[I]t appears undisputed that Appellant’s deposit of cash in lieu of supersedeas bond on October 7,1980 had the effect of staying any further execution of the Partial Judgment issued in Civil No. 52308. The cases cited by Appellees tend to establish that the supersedeas did not invalidate and did not rescind the previous documentary execution of the subject agreement of sale, although of course the agreement of sale might be subject to eventual recission in the event that this court should reverse the Partial Judgment. In line with cases from other jurisdictions holding that a supersedeas “suspends the efficacy” but does not “annul” the judgment being appealed, it generally appears that the deposit of cash in lieu of supersedeas bond in the instant case suspended all active legal effect of the Partial Judgment pending appeal but did not invalidate the judgment. Thus a court applying Hawaii law might treat the Partial Judgment as a valid judgment but as being presently unenforceable and subject to possible change.
The Bankruptcy Court (or a federal appellate court) is in a better position than this court to judge whether or not the Bankruptcy Court has given active legal effect to the Partial Judgment subsequent to the stay of execution of that judgment.
This court expresses no opinion as to whether the bankruptcy court judgment should be stayed. This court has no reason to interfere with the efforts of the Bankruptcy Court to enforce State law in the instant case.
While the state court did not explicitly state that its stay would not preclude the bankruptcy court from placing the Louis in possession as against parties other than Lillian Corey, the Louis interpreted the supreme court’s ruling as an indication that they were free to proceed with their attempts to obtain possession. The writ was delivered and the marshal proceeded to send notices to Lei-Anne Grouard and Florence Ellis that he would execute the writ against them on June 3.
Lei-Anne Grouard (William Ellis’s daughter), Howard and Pamela Holmes (mortgagees under Grouard, and Pamela being William Ellis’s niece), and Florence Ellis (William Ellis’s wife) immediately filed an action in the federal district court in Hawaii naming the U.S. Marshal as defendant. The action sought a declaration that the bankruptcy court’s judgment and writ of assistance were ineffective as against them. Plaintiffs also sought an injunction against the marshal’s executing the writ on them. Plaintiffs claimed that their interest in the property was not by or through any party to the bankruptcy proceeding, but rather through Ralph Corey (Ralph), Lillian’s ex-husband.
Lillian and Ralph were divorced by decree entered in February 1973. In an order regarding the division of property entered on March 13, 1973, the court (Judge Lum, the same judge who decided the state court case between Lillian Corey and the Louis in 1979) made the following statements regarding Lillian’s property dealings with her sister Bessie Hagopian:
The marital estate is to include all properties held by them [Lillian and Ralph] jointly or individually and such properties that were conveyed by the defendant [Lillian] to her sister, Bessie Hagopian, during the period of their marriage .... The evidence is unclear, uncorroborated and unsupported as to Bessie’s contribution in any of the real properties purchased by defendant. The Court finds that transfers of the properties to Bessie were made by defendant with the intent to defeat plaintiff [Ralph] of his equitable share of the marital estate.
*1245 However, the property distribution list in the March 13,1973 order did not include the Silvers word Inn.
Lei-Anne Grouard, Howard and Pamela Holmes, and Florence Ellis based their asserted right to declaratory and injunctive protection from execution of the writ of assistance on a November 3, 1980 quitclaim deed from Ralph, followed by a series of lease and mortgage arrangements among Grouard, the Holmeses, and Florence Ellis. In the deed, Ralph stated that because Lillian had failed to disclose to the divorce court that Bessie Hagopian held title to the Sil-versword Inn as security for money lent by Lillian from marital assets, with the intent to defeat Ralph’s equitable share of the estate, Lillian now held his interest in the property as constructive trustee.
On May 28,1981, the district court (Judge Heen),[7] denied orally the motion for preliminary injunction. That denial was immediately appealed to this court (No. 81-4318). In due course, that appeal was consolidated with the two appeals from the bankruptcy proceeding.
The final development in this procedural tangle was the decision of the Hawaii Intermediate Court of Appeals[8] in the consolidated appeals from the two state actions between the Louis and Lillian. That decision was filed on October 20, 1981, just two days before the hearing in this case. The Hawaii court affirmed in part, and reversed and remanded in part, the judgment granting the Louis specific performance of the agreement of sale between them and Lillian Corey, affirmed the dismissal of her complaint against them, and reversed the award of attorney fees to the Louis in the latter action.
ANALYSIS
I. Appeal No. 81-4081
For reasons which will appear shortly, the critical issue on which all of these appeals depend is that raised by appeal No. 81-4081 — whether the March 1971 transaction between Ellis and Bessie Hagopian was a sale or a mortgage.[9] We turn, therefore, to that issue.
*1246 A. Mortgage or Sale?
The subject property herein was also the subject property in a prior Chapter XII proceeding filed by Ellis, Bankruptcy No. 70-249, in which an Amended Real Property Arrangement was confirmed by the court on January 22, 1971. That arrangement provided, among other things, as follows:
The subject property shall be conveyed by the debtor [Ellis] to the purchaser [Bessie Hagopian] free and clear of liens, but subject to a lease to creditor SILVERS-WORD CORPORATION and a repurchase option to the debtor [Ellis], as provided in aforesaid agreements filed in this proceeding.
Subsequently Ellis executed and delivered to Bessie Hagopian a Warranty Deed, subject to an existing lease to the Silversword Corporation and a repurchase option to Ellis. The bankruptcy court’s conclusion that this transaction was a sale and not a mortgage was based on its reasoning that, under the principle of res judicata, it was bound by the court-confirmed arrangement in Bankruptcy No. 70- 249, and that this arrangement called fpr a sale of the property from Ellis to Hagopian, and not for a mortgage.
The appellants do not dispute that the prior bankruptcy proceedings must be given res judicata effect. They argue, however, that what was confirmed was a mortgage. Their position is that, under Hawaii law, a warranty deed purporting to convey a fee simple, but subject to a repurchase option in the grantor, is a mortgage instrument, and that the original bankruptcy court (in 70' 249) was aware of this.
1. Relevant Hawaii Law
The law of other jurisdictions varies as to the effect of a deed absolute on its face coupled with a repurchase option. See Swallow Ranches, Inc. v. Bidart, 525 F.2d 995, 997 98 (9th Cir. 1975) (collecting cases and authorities). The Hawaii cases, however, do not disclose any similar uncertainty on this question. All reported cases bearing on the issue either support or are consistent with the position that the 1971 transaction was a mortgage.
In Makuakane v. Tanigawa, 50 Haw. 493, 443 P.2d 153 (1968), the court was faced with an instrument which contained an absolute conveyance in one portion, and in the other portion the following proviso:
PROVIDED HOWEVER; if the sum of One Hundred Ten ($110.00) Dollars is paid in full within one (1) year . . . then this conveyance shall be of no force and effect.
Id. at 494 95, 443 P.2d at 154. The court observed:
The instrument is basically in the same form as modern mortgages drafted In this jurisdiction. That is, a mortgage usually contains an outright or absolute conveyance to a mortgagee with a disfea-sance clause whereby it is stated that upon the payment of a certain sum of money the deed shall become null and void. The law is clear that where an absolute conveyance contains a d is fea-sance clause, the instrument is a mortgage.
Id. at 495, 443 P.2d at 155 (emphasis added).
Under Hawaii law it does not matter whether the disfeasance clause appears on the face of the deed, on a separate writing, or even in a mere oral agreement. Kahau v. Booth, 10 Haw. 332, 333-34 (1896). Ka-hau involved a deed absolute on its face, and a simultaneously executed repurchase option on a separate page. The court held that the transaction was a mortgage.[10] See *1247 also Chave v. Dowsett, 6 Haw. 221 (1878). While Kahau is indeed an old case, appel-lees have cited no Hawaii case which overrules it or even questions its authority. It was cited as precedent in Makuakane, supra, 50 Haw. at 495, 443 P.2d at 155. It was also cited and explained in Kawauchi v. Tabata, 49 Haw. 160, 170, 413 P.2d 221, 227 (1966). Kawauchi itself also directly supports the conclusion that the transaction here was a mortgage. Kawauchi involved a deed absolute with a leaseback and an option for the lessee to purchase the property. The transaction was held to be a mortgage, not a sale. 49 Haw. at 180, 413 P.2d at 232.
Appellees cite several cases in support of their contention that “there is a heavy presumption in favor of interpreting such transactions in accordance with their form.” Brief of Louis at 37. None of those cases help appellees, although they do illustrate the fact that the law varies from one jurisdiction to another on this point. Swallow Ranches, Inc. v. Bidart, 525 F.2d 995 (9th Cir. 1975), actually holds that the “substance of the transaction and the intent of the parties” is controlling, not the form. 525 F.2d at 998. But more important, the case construes and applies Nevada law and has no bearing on the issue here. Rizo v. MacBeth, 398 P.2d 209 (Alaska 1965), was concerned with the direct reformation of a deed. There is no mention in the case of any repurchase option or agreement, and no discussion of what effect such an agreement might have. And the case deals with Alaska law. Blue River Sawmills, Ltd. v. Gates, 225 Or. 439, 358 P.2d 239 (1960), declined to find a mortgage, observing that the test is “whether there is an unsatisfied indebtedness owing the grantee which is enforceable independent of the deed.” Id. at 460, 358 P.2d at 249. But this test is explicitly rejected in Kawauchi, supra, 49 Haw. at 172-76, 413 P.2d at 228-30. Blue River Sawmills is thus not a reliable guide to Hawaii law. Glasgow v. Andrews, 129 Cal.App.2d 660, 277 P.2d 400 (1954), turned on a factual dispute regarding the intention of the parties; the affirmance by the California Court of Appeals of the trial court’s finding that a sale was intended does not shed light on the legal issue presented here.
We note that many jurisdictions regard the intent of the parties to be the controlling factor in determining whether a transaction is a sale or a mortgage. See, e.g., Swallow Ranches, Inc. v. Bidart, supra, 525 F.2d at 997-98 (collecting cases). This is the rule in Hawaii as well. See Haw.Rev.Stat. § 506- 1(a) (1976) (“Every transfer of an interest in real property . . . subject to disfeasance upon the payment of an obligation ... is to be deemed a mortgage .... ”); Hess v. Paulo, 38 Haw. 279, 285-86 (1949) (construing former Haw.Rev.Stat. § 8871 (1945), now codified at § 506-1) (purpose of rule is “to ensure effectuation of the genuine purpose and intention of the parties by subordinating thereto the ostensible form in which the transaction is finally couched”). See also Kawauchi, supra, 49 Haw. at 170 71, 413 P.2d at 227; Ah Chong v. Kaluahine, 9 Haw. 571, 574 (1894). In the instant case, however, there is no indication in the record that the bankruptcy court engaged in any analysis of the facts which would bear on the intent of the parties and the true substance of the transaction. Instead, the court seems to have based its determination on the form of the transaction alone.
2. The Judgment in Bankruptcy No. 70-249
Even though Hawaii law is settled that a deed absolute coupled with a repurchase option creates a mortgage when the parties so intend, the possibility exists that the bankruptcy court that approved the transaction understood it to be a sale and based its approval on that understanding. If that were the case, the principle of res judicata would provide sufficient basis to affirm the judgment below. Examination of the record, however, reveals no such understanding by the bankruptcy court and, in *1248 fact, suggests that the transaction was understood from the outset to be a mortgage.
Of particular interest is Ellis’s application filed with the bankruptcy court seeking confirmation of the proposed arrangement. That application included the following recitations:
7... .
a. That the debtor convey the subject property to Bessie Hagopian upon the payment into the registry of this Court the balance of the purchase price of $85,500.
b. That said sale be subject to the existing lease to SILVERSWORD CORPORATION, . . . yielding to the purchaser a net return of 10 percent per annum, after gross income taxes, on her investment of $85,500.
c. That said sale be subject to an assignable repurchase option to the debt- or, to be exercised within two years after conveyance, providing for an additional increment of 5 percent per an-num to Bessie Hagopian upon repurchase by the debtor.
* * * * Hi *
10. That the creditors affected thereby have unanimously accepted the Amended Arrangement by filing Acceptances in this proceeding ....
*****:}:
12. That . . . lessee SILVERSWORD CORPORATION is obligated to pay a percentage rental .. .; and that . . . any rental in excess of the fixed rental payable to Bessie Hagopian shall be payable to the debtor or his assigns.
13. That, upon execution of the Amended Arrangement,
* * * * # ik
c. The aggregate principal sum of $36,647.57 plus interest from 1959-1962 so consolidated and assigned to creditor SMITH shall be compromised to $28,-500.00 plus a 5 percent fee for ... a total of $29,925.00,
d. The compromised sum of $29,925.00 shall be secured by a pledge to creditor SMITH of the debtor’s option to repurchase the subject property, and
e. Said compromised sum shall be paid without interest from the debtor’s assignment of percentage rentals from lessee SILVERSWORD CORPORATION in excess of the fixed rental due Bessie Hagopian . . .
14. That, upon the execution of the Amended Arrangement, the following claims of creditor SILVERSWORD CORPORATION shall be deferred and applied contra future rental payments due the debtor or his assigns . . . after payment of fixed rentals due Bessie Hagopian and percentage rentals in excess thereof assigned to creditor SMITH:
Claims now assigned to creditor SMITH and secured by a second mortgage . . . $8,261.58
# JR * # * *
19. That, therefore, the effect of the Amended Arrangement is a down payment by your applicant [Ellis] of $8,114.41 on a purchase price of $187,-000.00, the assumption of $85,127.01 in claims against the grantor, and the payment of $85,500.00 on account.
Notice that paragraph 7(b) sets the income to Hagopian from the preexisting lease to Silversword Corporation, which was operating a restaurant on the premises, as a percentage of her “purchase price,” and in an amount that was less than Silversword was obligated to pay under the preexisting lease. While perhaps consistent with the theory that the transaction is a sale, this feature supports more readily the conclusion that Hagopian was merely a lender of money. Ordinarily, the purchaser of real estate expects future income from the property to bear a relation to the future value of the property, and at best hopes that future income will relate favorably to the original purchase price. Here, however, Hagopian stood to gain nothing from future appreciation of the property, or increased profitability of the lessee Silversword Corporation. Instead, she would get a regular, fixed income set by reference to her initial investment — the usual expectation of a *1249 lender of money. Of course she did run the risk that the property would become worthless or that the lessee business would fail. This risk, however, is typical of the mortgagor-mortgagee transaction.
Secondly, the remainder was to be applied to satisfy EUis’s other debts, (paragraphs 12, 13, 14). This fact, too, suggests that Ellis was to remain the owner of the property, since beneficial ownership of property typically includes the right to enjoy the income generated by it. Satisfaction of Ellis’s debts is a benefit to Ellis, not to Hagopian. Of course, this feature of the transaction is not conclusive either, since the owner of property is free to assign the rents to another. The suggestion is strengthened, however, by the recitation of paragraph 19 that Ellis was making a downpayment on the purchase price of the property.
Thirdly, Ellis stood to benefit, under the terms of the arrangement, from any appreciation in the value of the property since in the event of such appreciation, he was free to exercise the repurchase option and recover title to the property. Hagopian would then get only the return of her original investment plus a percentage increase. In this respect, Ellis again appears to have enjoyed the advantage of ownership, and Hagopian appears once again in the role of a mortgagee.
Finally, if this transaction is nevertheless regarded as a sale to Hagopian, it is striking how little she got in comparison with the usual “bundle of rights” comprising fee simple title. The value of her interest is substantially unrelated to possible future appreciation of the property. It is subject to a lease of the whole parcel. It is defeasi-ble. In reality, at least during the term of the lease and option, she got nothing but a flow of income calculated as a percentage of her investment.
In holding that the bankruptcy court confirmed a sale rather than a mortgage, Judge King nowhere discussed or even mentioned any of these recitations. His conclusion appears to have been based only on the form of the deed itself, and on language in the bankruptcy No. 70-249 order calling for a transaction memorialized in that form. In view of our survey of relevant Hawaii law, and in view of the absence of any findings as to the actual intent of the parties, we must conclude that the characterization of this transaction as a sale rather than a mortgage was error. We prefer not to speculate as to whether, in a full hearing, the evidence would support a finding that the parties intended a sale, or a finding that the bankruptcy judge in bankruptcy No. 70-249 understood the transaction to be a sale and based his order of confirmation on that understanding. Accordingly, we do not reach the question whether either such possible finding would support a judgment in favor of the Louis.
3. The Effect of the State Court Proceedings Between the Louis and Lillian Corey
When the Louis sued Lillian in state court for specific performance of the agreement of sale between them, one of the defenses was that Lillian did not even own the property. This defense was based on the mortgage theory discussed above. The Louis now argue that the judgment in their favor in the state trial court, now affirmed in relevant part on appeal,[11] requires this court to reject the mortgage theory on principles of collateral estoppel and stare deci-sis.
Ellis, of course, and many of the other parties to these consolidated appeals, were not named parties to the state court action. Whether they could be bound by any collateral estoppel effect of that action would depend on the extent to which they had an interest in, and exercised control over, the litigation in the state courts. Montana v. United States, 440 U.S. 147, 154, 99 S.Ct. *1250 970, 974, 59 L.Ed.2d 210 (1979). It is not necessary, however, to undertake that analysis here because the state trial court, as we read its decision, did not hold that the March, 1971 transaction was a sale.
We note at the outset that Judge Lum, in the state action, made a number of findings of fact relating to the March 1971 transaction and the mortgage theory. He found that circumstances of the kind surrounding the transaction in Kawauchi, supra, did not exist here. However, he stopped short of making an explicit finding that the transaction was a sale and not a mortgage.[12] At the same time, he made findings which would support the judgment rendered even if the transaction had been a mortgage. For instance, he found that Lillian Corey was “estopped to now deny ownership of the property” because of her own representations before and during the litigation. He also noted that “[defendant could have achieved a conveyance of the property free and clear from all encumbrances even if she had in fact only the interest of a mortgagee therein,” because of an outstanding offer by Ellis to convey the property to the Louis under a formula by which she would have received $282,500 — more than she claimed to be entitled to under the mortgage theory. In view of these observations by Judge Lum, we do not see in his opinion an unequivocal finding that the 1971 transaction was a sale rather than a mortgage.
Even if there were an unequivocal finding that the transaction was a sale, we would not be able to apply it as a bar under principles of collateral estoppel or stare decisis. It is hornbook law that both of these principles give effect only to matters that have formed an essential basis for the earlier decision. But the prior action here was for enforcement of a contract between the Louis and Lillian. Lillian agreed to sell the Silversword Inn to the Louis. She failed to perform her agreement by delivering possession. Ordinarily, a person is not relieved of liability for breach of a promise to sell property simply because he or she turns out not to have marketable title. Of course, specific performance of such an agreement will not be decreed if the defendant does not have and cannot obtain title. 5A Cor-bin on Contracts 11170 at 255 (West 1964). But that rule does not apply where, as Judge Lum found here, there is a contract between the vendor and the true owner under which the vendor can obtain title. See id. at 256. We conclude that it was unnecessary for the court to decide whether the 1971 transaction was a sale or a mortgage, and that therefore no such decision stands as a holding of the case.[13]
B. Remaining Issues in Appeal No. 81-4081
Appellants contend that once Judge King rejected the mortgage theory and ruled that the bankrupt Ellis had no interest in the subject property, he no longer had jurisdiction to resolve disputes between the other parties to the adversary proceedings regarding title to that property. Although we are remanding for a fresh determination of the mortgage question, this issue will arise again if the bankruptcy court determines on remand that there was no mortgage. We note for future guidance that we find no error in the approach taken by the bankruptcy court.
It is true, of course, that “[a] court of bankruptcy cannot entertain jurisdiction of a private controversy which does not relate to matters pertaining to bankruptcy,” First State Bank & Trust Co. v. Sand Springs State Bank, 528 F.2d 350, 353 (10th *1251 Cir. 1976), and that it “lacks jurisdiction of a controversy solely and exclusively between third parties which does not involve, directly or indirectly, the bankrupt or its property,” id. But neither of these principles apply here. The court below had jurisdiction over the property because Ellis claimed title to it and was apparently in actual possession at the time his petition initiating the bankruptcy proceedings was filed. Upon filing of the bankruptcy petition, the property passed into the custody of the bankruptcy court, which then had jurisdiction to determine controversies concerning the property. 2 Colliers ¶ 23.04 at 457-58 (14th ed. 1979).
Furthermore, an independent ground exists here supporting the jurisdiction of the bankruptcy court. Consent of the parties will confer such jurisdiction in a bankruptcy adversary proceeding. See Collier’s ¶ 23.08 (14th ed. 1979). “Nor have the courts found any difficulty in deciding that consent will confer jurisdiction where, without consent, even a plenary suit would have been cognizable only in a state court.” Id. at 535. Consent may be implied “from any act indicating a willingness on the part of the party that his claim or interest be determined summarily by the bankruptcy court.” Id. at 536. Appellants here initiated the adversary proceeding in question, and can hardly now deny that they have therefore consented.
Neither of the cases cited by the appellants runs counter to the conclusions just stated. Kaplan v. Guttman, 217 F.2d 481 (9th Cir. 1954), did not involve property that was actually or constructively in the possession of the bankrupt or trustee. The same may be said of the disputed certificates of deposit in First State Bank & Trust Co. v. Sand Springs State Bank, 528 F.2d 350 (10th Cir. 1976). Nor has our research disclosed any authorities to the contrary. We conclude that the bankruptcy court did have jurisdiction to adjudicate the competing claims to the subject property of all the parties to the adversary proceeding.
II. Appeal No. 81-4213 and Appeal No. 81-4318
On April 20, 1981, on motion of the Louis, Judge King ordered the issuance of a writ of assistance directing the marshal to eject from the Silversword Inn Ellis and other named parties, and “all and every person and entity holding possession of said premises.” The appeal is taken on the basis that the writ was overbroad because it ran, by its terms, against persons who were not party to or bound by the underlying judgment, and on the basis that the issuance of such a writ was barred by the supersedeas order then in effect, staying execution of the state court judgment obtained by the Louis against Lillian.[14] In view of our decision reversing and remanding the underlying judgment, the writ must be vacated. We need not reach the substantive questions raised by the appellants.[15]
When the writ of assistance was issued, William Ellis’s wife, Florence Ellis, was in possession of the premises as the lessee of William Ellis’s daughter, Lei-Anne Grouard. Grouard claimed a title independent of that claimed by William Ellis in the bankruptcy proceedings. The marshal notified Florence Ellis and Grouard that he would execute the writ against them on June 3. They went to federal district court seeking a declaration that the bankruptcy court judgment and writ were ineffective against them, and requesting a preliminary injunction against execution of the writ. The request for preliminary injunction was denied orally by Judge Heen, and plaintiffs *1252 took this appeal. Because we have determined that the writ of assistance itself must be vacated, this appeal is now moot.
For the reasons stated above, the judgment below in appeal No. 81-4081 is reversed and remanded for proceedings not inconsistent with this opinion; the writ of assistance appealed from in appeal No. 81-4213 is vacated; and appeal No. 81-4318 is dismissed.

. Although the notice of appeal was filed before the entry of the March 10 judgment, the appeal is valid under Fed.R.App.P. 4(a)(2) since the bankruptcy court had announced its decision in orders filed on January 8 and February 11.

. While the Silversword Trust (Robert and Pauline Shaw as trustees) had claimed an interest from January 1, 1980 until September 1, 1980 as a mortgagee of the property, it filed an affidavit in the bankruptcy court in December 1980 disclaiming any interest in the property and indicating that the trust was terminated. William Ellis and Florence Ellis, among others, also signed statements of resignation as agents of the Silversword Trust.
Upland Investments, of which William Ellis was the vice president, had claimed a mortgage lien against the Silversword Inn, which was released on September 30, 1980. Upland owned and leased furniture and equipment on the Silversword Inn premises until January 1, 1981, but in affidavits signed in November 1980 and March 1981, Upland disclaimed any interest in the property.
The Sword, of which Florence Ellis was president and for which Helen Ryan, the trustee in bankruptcy for William Ellis, was the attorney, had leased a portion of the Silversword Inn from Ellis from January 1, 1980 and all of the property from Kulalani from September 1, 1980. The lease terminated on November 30, 1980. The Sword subsequently sold all of its personal property on the premises and disassociated its domicile from the premises.
These entities had sought dismissal in the bankruptcy court of the claims involving them on the grounds that any controversy between the Louis and them was rendered moot by their disclaimers of interest in the property. Nevertheless, the bankruptcy court entered judgment against them on the merits.

. Appeal No. 80-4021 was properly before this court because the district court (Judge King) issued an order of dismissal of an appeal from the bankruptcy court’s judgment.

. See note 9, infra.

. In fact, Kulalani never posted the bond. Thus, the stay did not take effect.

. The proposed writ listed by name all parties except Lillian Corey, presumably in attempted deference to the state court stay.

. Plaintiffs had filed in the district court a Suggestion of Statutory Disqualification of Judge King.

. The Intermediate Court of Appeals has concurrent jurisdiction with the Hawaii Supreme Court, H.R.S. § 602-57, and hears cases which are assigned to it by the chief justice of the supreme court or his designee, H.R.S. § 602-5(8). All appeals are filed in the first instance with the supreme court. Id. Generally, the less important cases are assigned to the intermediate court. See Rule 27, Rules of the Supreme Court of the State of Hawaii.

. Before that issue can be reached, however, it must appear that this court has jurisdiction to entertain an appeal from a judgment entered on the bankruptcy docket by a district judge • sitting in bankruptcy. As we have noted, a motions panel of this court already once decided that question adversely to appellants, and then reinstated the appeal for further consideration of the jurisdictional question by the merits panel.
The identical jurisdictional question was presented to this panel in Ellis v. Cassidy, No. 80-4021, affirmed mem. Nov. 27, 1981. In that case, we said:
Under the old bankruptcy act — and this case arose under the old act — appeals were normally brought from the referee in bankruptcy to the district court. However, Bankruptcy Rule 901(8) supports the conclusion that a judgment of the district judge acting as bankruptcy judge is appealable directly to the circuit. Rule 901(8) defines “judgment” to include “any order appealable to the district court or, if entered by a district judge when acting as a bankruptcy judge, appeala-ble to the court of appeals.” Bankruptcy Rule 901(7) provides:
“Bankruptcy judge” means the referee of the court of bankruptcy in which a bankruptcy case is pending, or the district judge of that court when issuing an injunction under section ll(a)(15) of this title and when acting in lieu of a referee under section 71(c) of this title or under Rule 102.
Although these rules were promulgated in 1973 after plaintiff had filed his petition, they were made applicable to pending proceedings, where they would not work injustice, by an April 24, 1973 Order of the Supreme Court. No reason has been brought to our attention why the Bankruptcy Rules, which contemplate appeals from a district court judge in a bankruptcy proceeding to the court of appeals, should not provide jurisdiction in this case. Section 403 of the Bankruptcy Reform Act, entitled “Savings Provisions,” provides that a case that was commenced under the 1898 Act, and any matters and proceedings related to such case, shall be conducted and determined under that Act as *1246 though the 1978 Reform Act had not been enacted. The interest of justice would not be served by further delaying a disposition on the merits on grounds not raised by the defendant.
We adhere to that reasoning in holding that we have jurisdiction to hear the instant appeal.

. Kahau also settles another issue that has some bearing here, in Kahau, the time for exercise of the repurchase option had already passed. The same is true of the repurchase option in the present case. The Kahau court stated, “It made no difference that the time of *1247 repayment had been allowed to pass. Once a mortgage always a mortgage, and the mortgagor is allowed to redeem.” 10 Haw. at 334. Makuakane, supra, makes the same holding by implication.

. The Intermediate Court of Appeals remanded for the purpose of deleting two paragraphs from the Agreement of Sale the trial court had ordered the parties to execute, which the court of appeals held were erroneously included in the Agreement. In all other respects, it affirmed the judgment of the trial court.

. We decline to guess whether Judge Lum would have made such a finding if it had been necessary to support the judgment he rendered.

. The Intermediate Court of Appeals did not discuss the mortgage theory in its partial af-firmance of the trial court decision. Its opinion thus contains no dicta either agreeing with, or contrary to, our conclusions regarding Hawaii law on this subject. Arguably, the trial court’s written findings of fact and conclusions of law do contain contrary dicta. As noted in the text, they are suggestive of a finding that there was a sale rather than a mortgage. To the extent that such dicta are contrary to the Hawaii Supreme Court cases on the subject, on which we have relied, they cannot control our decision.

. As a result of the October 20, 1981 decision of the Intermediate Court of Appeals of Hawaii disposing of Corey’s appeal, that supersedeas is no longer in effect.

. We note, however, that language practically identical to that complained of here has been approved before. State v. Frandsen, 176 Wash. 558, 30 P.2d 371, 372 (1934) (“all persons . .. who are in possession of the premises”); Pacific States Savings and Loan Co. v. Harwell, 204 Cal. 370, 371, 268 P. 341 (1928) (“all and every other person or persons holding or detaining the said premises”). Whether such a writ could be enforced against a non-party is another question, however.